**Exhibit "A"**

# Supreme Court of Pennsylvania

## Court of Common Pleas
## Civil Cover Sheet

_Delaware_ County

| For Prothonotary Use Only: |
| --- |
| Docket No: 12-1524 |

*The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*

**Commencement of Action:**
- [X] Complaint
- [ ] Writ of Summons
- [ ] Petition
- [ ] Notice of Appeal
- [ ] Transfer from Another Jurisdiction
- [ ] Declaration of Taking

Lead Plaintiff's Name: James Doherty

Lead Defendant's Name: Allstate Ins Co.

- [X] Check here if you are a Self-Represented (Pro Se) Litigant   Both

Name of Plaintiff/Appellant's Attorney: Mary Lou Doherty

Are money damages requested? : [X] Yes   [ ] No

Dollar Amount Requested:  [ ] within arbitration limits   [X] outside arbitration limits
(Check one)

Is this a **Class Action Suit**? [ ] Yes   [X] No

**Nature of the Case**: Place an "X" to the left of the **ONE** case category that most accurately describes your **PRIMARY CASE.** If you are making more than one type of claim, check the one that you consider most important.

**TORT** (*do not include Mass Tort*)
- [ ] Intentional
- [ ] Malicious Prosecution
- [ ] Motor Vehicle
- [ ] Nuisance
- [ ] Premises Liability
- [ ] Product Liability (*does not include mass tort*)
- [ ] Slander/Libel/Defamation
- [X] Other: Bad Faith

**MASS TORT**
- [ ] Asbestos
- [ ] Tobacco
- [ ] Toxic Tort - DES
- [ ] Toxic Tort - Implant
- [ ] Toxic Waste
- [ ] Other: ____

**PROFESSIONAL LIABLITY**
- [ ] Dental
- [ ] Legal
- [ ] Medical
- [ ] Other Professional: ____

**CONTRACT** (*do not include Judgments*)
- [ ] Buyer Plaintiff
- [ ] Debt Collection: Credit Card
- [ ] Debt Collection: Other
- [ ] Employment Dispute: Discrimination
- [ ] Employment Dispute: Other
- [ ] Other: ____

Corporate Litigation
MAR 07 2012
Received

**REAL PROPERTY**
- [ ] Ejectment
- [ ] Eminent Domain/Condemnation
- [ ] Ground Rent
- [ ] Landlord/Tenant Dispute
- [ ] Mortgage Foreclosure
- [ ] Partition
- [ ] Quiet Title
- [ ] Other: ____

**CIVIL APPEALS**
Administrative Agencies
- [ ] Board of Assessment
- [ ] Board of Elections
- [ ] Dept. of Transportation
- [ ] Zoning Board
- [ ] Statutory Appeal: Other

Judicial Appeals
- [ ] MDJ - Landlord/Tenant
- [ ] MDJ - Money Judgment
- [ ] Other: ____

**MISCELLANEOUS**
- [ ] Common Law/Statutory Arbitration
- [ ] Declaratory Judgment
- [ ] Mandamus
- [ ] Non-Domestic Relations Restraining Order
- [ ] Quo Warranto
- [ ] Replevin
- [ ] Other: ____

C.P. 205.5

Philadelphia West

2/2010

# CIVIL COVER SHEET AND ENTRY OF APPEARANCE

## Delaware County Court of Common Pleas

1. Case Caption:

**JAMES DOHERTY, JOHN DOHERTY,**
**JAMES DOHERTY, TRUSTEE,**
**JAMES A. DOHERTY and**
**MARY LOU DOHERTY,**
**Plaintiffs,**

v.

**ALLSTATE INSURANCE COMPANY,**
**Defendant.**

Court Term & No.

____ X Jury
____ Non Jury
____ Arbitration
($0-$50,000)

2a. Plaintiff(s)
*(Name and address)*

**JAMES DOHERTY, JOHN DOHERTY,**
**JAMES DOHERTY, TRUSTEE, JAMES A.**
**DOHERTY and MARY LOU DOHERTY,**
**Plaintiffs,**

P.O. Box 12,
Haverford, Pa. 19041
610-853-3870

2b. Defendant(s)
*(Name and address)*

**ALLSTATE INSURANCE COMPANY,**
**Defendant.**

home offices located at ALLSTATE
Plaza, 3075 Sanders Road, Northbrook,
Illinois, 60062

3a. Related Cases?  ☒ Yes ____ No
*If* JAMES DOHERTY, JOHN DOHERTY,
JAMES DOHERTY, TRUSTEE,
                           Plaintiffs,
        v.                             No.06-9749
HAVERFORD TOWNSHIP,
PHILADELPHIA CONTRIBUTIONSHIP INS. CO.,
ALLSTATE INDEMNITY COMPANY,
Entry of Appearance  Defendants.

3b. Case Subject to Coordination Order? ____ Yes ☒ No
                              Date of Order
CHRISTINE CUCURULLO
as parent and Guardian
NICOLE CUCURULLO and
JOHN FALCONE
                              Plaintiffs,     No.07-015664
                v.
JAMES DOHERTY,
JAMES DOHERTY, TRUSTEE,
JOHN DOHERTY,
and MARY LOU DOHERTY

JAMES LOHERTY, JOHN DOHERTY,
JAMES DOHERTY, TRUSTEE,          iff in this
JAMES A. DOHERTY

To the Office of Judicial Support:
Kindly enter my appearance on behalf of _____
action. Papers may be served at the address set forth below.

Mary Lou Doherty,
_____
Attorney for party named above (*Please print*)

20568
_____
Attorney I.D. Number

Address:

P.O.Box 12
Haverford, Pa. 19041
610 853 3870

Telephone: ( 610 ) 853 3870 Fax: (    )

E-mail:

_____
Attorney Signature

February 22, 2012
_____
Date

*Choose only the one description which best reflects the principal type of case or relief sought from the list.*

## Case Description

**APPEAL**

**Minor Court**
- Money Judgment ___
- Landlord and Tenant ___
- Code Enforcement ___
- Personal Injury ___
- Breach of Contract ___
- Other _____ ___

**Local Agency**
- Civil Service ___
- Motor Vehicle ___
- Licenses and Inspections ___
- Liquor Control Board ___
- Tax Assessment Boards ___
- Zoning Board ___
- Other _____

**Proceedings Commenced by Petition**
- Appointment of Arbitrators ___
- Change of Name ___
- Compel Medical Examination ___
- Election Matters ___
- Eminent Domain ___
- Leave to Issue Subpoena ___
- Mental Health Proceedings ___
- Other _____ ___

**CIVIL ACTIONS COMMENCED BY WRIT OF SUMMONS OR COMPLAINT**
- Abuse of Process ___
- Action for Wrongful Death ___
- Class Action ___
- Confession of Judgment/Money ___
- Confession of Judgment/ Real Property ___
- Contract
  - Construction ___
  - Insurance/Bad Faith ☒
  - Negotiable Instruments ___
  - Other ___

**Intentional Tort**
- Assault and Battery ___
- Libel and Slander ___
- Defamation ___

**Employment/Wrongful Discharge**
- False Imprisonment ___
- Fraud ___
- Malicious Prosecution ___

**Negligence**
- Motor Vehicle ___
- Real Property ___
- Premises Liability ___
- Product Liability ___
- Toxic Tort
  - Asbestos ___
  - DES ___
  - Implant ___
- Toxic Waste ___
- Other _____ ___

**Professional Malpractice**
- Dental ___
- Legal ___
- Medical ___
- Other _____ ___

**Equity**
- Real Property ___
- Stockholders Derivative Action ___
- Waste Prevention ___
- Other _____ ___

- Declaratory Judgment ___
- Ground Rent ___
- Mandamus ___
- **Real Property**
  - Ejectment ___
  - Quiet Title ___
  - Mortgage Foreclosure ___
  - Mechanics Lien ___
  - Partition ___
  - Prevent Waste ___
- Replevin ___
- Saving Action Um/Uim ___
- Quo Warranto ___
- Other _____ ___

MARY LOU DOHERTY, Esquire 20568
Pro Se and Attorney for Plaintiffs James Doherty,
John Doherty, and James A. Doherty
P.O. Box 12,
Haverford, Pa. 19041
610-853-3870

| | |
|---|---|
| **JAMES DOHERTY, JOHN DOHERTY, JAMES DOHERTY, TRUSTEE, JAMES A. DOHERTY and MARY LOU DOHERTY, Plaintiffs,**<br><br>**v.**<br><br>**ALLSTATE INSURANCE COMPANY, Defendant.** | **COURT OF COMMON PLEAS OF DELAWARE COUNTY PENNSYLVANIA**<br><br>**CIVIL ACTION**<br><br>**NO.**<br>Jury Trial demanded |

**IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA**
**NOTICE**

YOU HAVE BEEN SUED IN COURT. IF YOU WISH TO DEFEND AGAINST THE

CLAIMS SET FORTH IN THE FOLLOWING PAGES, YOU MUST TAKE ACTION

WITHIN TWENTY (20) DAYS AFTER THIS COMPLAINT AND NOTICE ARE

SERVED, BY ENTERING A WRITTEN APPEARANCE PERSONALLY OR BY AN

ATTORNEY AND FILING IN WRITING WITH THE COURT YOUR DEFENSES OR

OBJECTIONS TO THE CLAIMS SET FORTH AGAINST YOU. YOU ARE WARNED

THAT IF YOU FAIL TO DO SO THE CASE MAY PROCEED WITHOUT YOU AND

A JUDGMENT MAY BE ENTERED AGAINST YOU BY THE COURT WITHOUT

FURTHER NOTICE FOR ANY MONEY CLAIMED IN THE COMPLAINT OR FOR

ANY OTHER CLAIM OR RELIEF REQUESTED BY THE PLAINTIFF. YOU MAY

LOSE MONEY OR PROPERTY OR OTHER RIGHTS IMPORTANT TO YOU.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU

DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR

TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU
CAN GET LEGAL HELP.

**Lawyers Reference Service**
**FRONT AND LEMON STREETS**
**Delaware County  Bar Assoc. Building**
**Media, Pa. 19063**
**610 566 6625**

MARY LOU DOHERTY, Esquire 20568
Pro Se and Attorney for Plaintiffs James Doherty,
John Doherty, and James A. Doherty
P.O. Box 12,
Haverford, Pa. 19041
610-853-3870

| | |
|---|---|
| **JAMES   DOHERTY,   JOHN   DOHERTY,**<br>**JAMES  DOHERTY, TRUSTEE, JAMES A.**<br>**DOHERTY and MARY LOU DOHERTY,**<br>**Plaintiffs,**<br>**v.**<br>**ALLSTATE INSURANCE COMPANY,**<br>**Defendant.** | **COURT OF COMMON PLEAS**<br>**OF DELAWARE COUNTY**<br>**PENNSYLVANIA**<br>**CIVIL ACTION**<br><br>**NO.** |

## COMPLAINT

1. The Plaintiffs, James Doherty and John Doherty, are the same individuals who are Plaintiffs in the action filed in Del CCP No. 06-9749 and Defendants in Del CCP No. 07-015664.

2. The Plaintiff, Mary Lou Doherty, is not a party to Del CCP 06-09749, but is the same individual who is named as a Defendant together with James Doherty, John Doherty, and James Doherty, Trustee of the Estate of Virginia Moore, deceased in the action filed by Christine Cucurullo, Individually and as Guardian of Nicole Cucurullo and John Falcone in Del. CCP No. 07-015664

3. The Plaintiff, James Doherty, Trustee, is the same individual as the Plaintiff in Del CCP No. 06-9749 but is not the same Defendant as James Doherty, Trustee of the Estate of Virginia Moore, deceased, named in Del CCP No. 07-015664.

4. Kevin Steinberg, is an attorney presently with offices at 210 E Street Suite 3A, Feasterville, Bucks County, PA who formerly was a member of the firm:

EDELSTEIN & STEINBERG, LLP, now known as EDELSTEIN LAW, LLP, Philadelphia, Pa who together with Attorney Edelstein have been representing Christine Cucurullo, Individually and as Guardian of Nicole Cucurullo, and John Falcone.

5. The Plaintiff, James A. Doherty, is the same individual whose identity Attorney Steinberg used without the consent of James A. Doherty in order to misrepresent in Del CCP No. 07-015664 that Attorney Steinberg had served the Defendant, James Doherty, by mailing the Complaint to James Doherty, Trustee.

6. The Defendant, ALLSTATE INSURANCE COMPANY, (hereinafter known as "ALLSTATE") is a corporation which conducts business in the Commonwealth of Pennsylvania, with its home offices located at ALLSTATE Plaza, 3075 Sanders Road, Northbrook, Illinois, 60062 and is the same corporation which is a Defendant in the action filed in Del. CCP No. 06-09749.

7. On November 15, 2004, John Falcone and Christine Cucurullo (hereinafter known as "FALCONE/CUCURULLO"), entered into a lease agreement to rent 25 W. Wilmot Avenue, Haverford Township, Delaware County, Pennsylvania (hereinafter known as "WILMOT") from Virginia Moore, Landlord (hereinafter known as "MOORE LEASE") and are the same individuals as the Plaintiffs in CCP No. 07-015664. (A true and correct copy of MOORE LEASE is attached hereto and marked Exhibit "A").

8.  On November 30, 2005, over a year after entering into the MOORE LEASE, Virginia Moore died.

9.  Shortly after Virginia Moore's death, James Doherty contacted ALLSTATE's agent, the McKeon Agency, Inc., located in Haverford Township, Delaware County, Pennsylvania in order to buy policies insuring WILMOT and other properties owned by James Doherty and John Doherty.

10. At all times relevant, ALLSTATE knew that after December 24, 2005, it had issued policies through its agent, McKeon Agency Inc., for the following properties in Haverford Township naming James Doherty and John Doherty as named insureds pursuant to the attached Declarations of Coverage:

> a. 25 W. Wilmot Avenue
>
> b. 36 Ralston Avenue
>
> c. 2424 Delchester Driveway
>
> d. 1118 Allston Road
>
> e. 722 Lawson Avenue (1st and 2nd Floor)
>
> f. 755 Lawson Avenue
>
> g. 701 Penfield Avenue
>
> h. 734 Penfield Avenue
>
> (True and correct copies are attached hereto and marked Exhibit "B")

11. At all times relevant, ALLSTATE's policies for each of the properties listed above have been renewed annually through the McKeon agency and have been in full force and effect.

12. Each of the ALLSTATE policies for the properties listed above contains a provision known by ALLSTATE as: OTHER INSURANCE, linking the coverage of each policy together. (A true and correct copy is attached hereto and marked Exhibit "C")

13. At all times relevant Mary Lou Doherty owned 456 Colfax Road and she and James A. Doherty owned 640 Lawson Avenue, both in Haverford Township.

14. At all times relevant, Wenonah Nelson (hereinafter "Dr. Nelson") has been a medical doctor specializing in pediatrics, with offices at 864 County Line Road, Bryn Mawr, Delaware County, Pennsylvania.

15. On February 9, 2006 ALLSTATE received a certified letter dated February 4, 2006, from James Doherty and John Doherty (hereinafter known as "NOTICE OF CLAIM") with the following Exhibits attached:

    a. Copy of Claim of FALCONE/CUCURULLO dated January 30, 2006, claiming bodily injuries and damages prepared by their Attorney O'Keefe, (A true and correct copy is attached hereto and marked Exhibit "D")

    b. Copy of Haverford Township Inspection Report dated December 13, 2004 signed by Inspector Pili, (A true and correct copy is attached hereto and marked Exhibit "E")

    c. Copy of first page and signature page of MOORE LEASE, (Exhibit "A").

    d.  December 28, 2005 Notice to FALCONE/CUCURULLO of breach of MOORE LEASE, (A true and correct copy is attached hereto and marked Exhibit "F")

(A true and correct copy of NOTICE OF CLAIM together with signed certified return receipt is attached hereto and marked Exhibit "G").

16. On or about February 9, 2006, ALLSTATE knew or should have known the following:

    a.  On December 13, 2004, a few days before FALCONE/CUCURULLO moved into WILMOT Inspector Pili of Haverford Township (hereinafter known as "HAVERFORD") inspected WILMOT pursuant to Ordinance 104-11 and found the property in good repair, clean, sanitary, and in habitable condition and in full compliance with all provisions of Haverford Township code and "OK to Lease". (Exhibit "E")

    b.  According to the MOORE LEASE and Exhibit "D", after December 19, 2004, FALCONE/CUCURULLO were in exclusive possession of WILMOT until they moved out on or before January 30, 2006.

    c.  According to FALCONE/CUCURULLO's Attorney O'Keefe, FALCONE/CUCURULLO and Christine Cucurullo's daughter, Nicole, were claiming that they had suffered injuries as a result of allegedly uninhabitable conditions in WILMOT and HAVERFORD Code officials had inspected WILMOT. (Exhibit "D")

17. On or about February 9, 2006  ALLSTATE in its capacity as insurer should have investigated the NOTICE of CLAIM, Exhibit "G", and should have known:

    a.  In order for HAVERFORD Code officials to have inspected WILMOT, FALCONE/CUCURULLO would have submitted a written Complaint to HAVERFORD's Codes Director.

    b.  On January 9, 2006 FALCONE/CUCURULLO submitted a written Complaint "against Landlords: Mary Lou Doherty/James Doherty" to HAVERFORD's Codes Director complaining of "toxic Black mold" (hereinafter referred to as "MOLD") and other damages to WILMOT. (hereinafter known as "FIRST COMPLAINT").  (A true and correct copy is attached hereto and marked Exhibit  "H")

    c.  Under ALLSTATE's policies if a loss were excluded from coverage or caused by an excluded cause of loss, such as MOLD, ALLSTATE could avoid liability for most of the loss.

    d.  ALLSTATE knew MOLD is always present inside buildings to some extent and knew its policies did not define any objective standard in order to determine when a loss was caused by mold.

    e.  The Commonwealth of Pennsylvania Department of Environmental Protection did not have the jurisdiction or authority to regulate mold inside buildings, including homes.

    f.  HAVERFORD did not have the jurisdiction or authority to regulate mold inside buildings, including homes.

g.  A field investigation had been conducted on January 25, 2006, by the Pennsylvania Department of Labor and Industry's Field Operations Manager who advised HAVERFORD's Township Manager English and Codes Director Lori Hanlon Widdop (hereinafter known as "HANLON WIDDOP") that pursuant to the PUCC (Pennsylvania Uniform Construction Code), HANLON WIDDOP did not satisfy the requirements to perform the duties of a Building Code Official or Inspector.   (A true and correct copy is attached hereto and marked Exhibit "I").

h.  On February 1, 2006 FALCONE/CUCURULLO directly and proximately caused HAVERFORD's Inspector Steven Andrien, (hereinafter known as "ANDRIEN") to notify Mary Lou Doherty that prior to WILMOT being re-occupied, HAVERFORD will require a standard rental inspection and in addition a report from a so-called "Environmental Testing Agency". (A true and correct copy is attached hereto and marked Exhibit "J").

18. On February 9, 2006, after ALLSTATE received its named insureds' NOTICE OF CLAIM, ALLSTATE should have begun investigating and should have known it had a duty to defend its insureds.

19. On or about February 9, 2006, ALLSTATE should have been investigating and should have known that   HAVERFORD Codes Director HANLON WIDDOP and Codes   Department employees conducted themselves as follows:

a. It was up to HANLON WIDDOP "to either *give* or *not give* a license" to an applicant, including, as here, James Doherty, John Doherty, James A. Doherty, and Mary Lou Doherty.

b. HANLON WIDDOP knew HAVERFORD's enforcement notices, which she and ANDRIEN issued, including those sent to James Doherty, John Doherty, and Mary Lou Doherty, were invalid and frustrated an individual's right to appeal.

c. After a Complaint was submitted, which HANLON WIDDOP referred to as a "*Situation*", the participants' names would be posted on HAVERFORD's *Bulletin Board* in the Codes Department.

d. When matters came into Codes such as applications for licenses, HAVERFORD employees knew if an individual's name were posted on the HAVERFORD *Bulletin Board* not to process the matters *normally*, "*they get flagged*", and it goes back to the Inspector before there's any action.

e. HANLON WIDDOP approved all documents that went out of HAVERFORD's Codes Department.

f. HANLON WIDDOP did not do any independent investigations to determine if ANDRIEN or any other HAVERFORD employee was being truthful with her.

g. It was of no importance to HANLON WIDDOP what happened at any subsequent Court proceedings because she had already made a decision with respect to the issuance of a license.

20. On or before February 28, 2006 James Doherty, John Doherty, and Mary Lou Doherty applied for HAVERFORD rental licenses for the following properties (hereinafter known as "HAVERFORD PROPERTIES"):

    a.  25 W. Wilmot Avenue

    b.  36 Ralston Avenue

    c. 2424 Delchester Driveway

    d.  1118 Allston Road

    e. 722 Lawson Avenue (1st and 2nd Floor)

    f.  755 Lawson Avenue

    g. 701 Penfield Avenue

    h. 734 Penfield Avenue

    i. 640 Lawson Avenue (1st and 2nd Floor)

    j. 456 Colfax Road.

21. On or before March 1, 2006, ALLSTATE should have been investigating and should have known that after FALCONE/CUCURULLO submitted their FIRST COMPLAINT alleging MOLD was present in WILMOT to HAVERFORD Codes, the names of James Doherty and Mary Lou Doherty had been posted on HAVERFORD's *Bulletin Board* and thereafter matters were turned over to ANDRIEN.

22. On or before March 1, 2006, ALLSTATE should have been investigating and should have known that FALCONE/CUCURULLO had caused their insureds'

applications for HAVERFORD rental licenses to be "*flagged*" and not processed *normally* but turned over to ANDRIEN.

23. By August 28, 2006, ALLSTATE should have been investigating and known that FALCONE/CUCURULLO had directly and proximately caused feuding by HAVERFORD's Codes Director HANLON WIDDOP and its Inspector ANDRIEN with ALLSTATE's insureds as follows:

   a. On March 1, 2006 HANLON WIDDOP did not *give* ALLSTATE's insureds their rental licenses for their HAVERFORD PROPERTIES.

   b. On March 17, 2006 ANDRIEN wrongfully issued three invalid HAVERFORD enforcement notices charging Mary Lou  Doherty with zoning violations at 722 Lawson Avenue,

   c. By March 17, 2006, pursuant to HANLON WIDDOP's and ANDRIEN's holding improper influence over HAVERFORD police, HAVERFORD police began harassing and humiliating James Doherty, John Doherty, and Mary Lou Doherty,

   d. Starting about March 17, 2007 HAVERFORD police detained Mary Lou Doherty and threatened her with arrest for being at 722 Lawson Avenue,

   e. On April 25, 2006 ANDRIEN issued an invalid HAVERFORD inspection report for WILMOT which he subsequently  wrongfully altered after filing,

   f. On May 2, 2006, ANDRIEN issued an invalid HAVERFORD inspection report for WILMOT,

g.  On May 10, 2006 ANDRIEN issued an invalid HAVERFORD inspection report for 2424 Delchester Dr.,

h.  On May 12, 2006 ANDRIEN issued a citation charging James Doherty with failure to obtain a rental license for WILMOT when he knew or should have known he and HANLON WIDDOP had suppressed his applications for rental licenses,

i.  On May 16, 2006 and July 25, 2006, HAVERFORD  employee ANDRIEN repeatedly issued invalid HAVERFORD inspection reports for 722 Lawson Avenue,

j.  On May 20, 2006, Mary Lou Doherty sent ANDRIEN an Environmental Report showing WILMOT was safe and habitable which he suppressed,

k.  In the summer of 2006 HAVERFORD police detained James A. Doherty and threatened him with arrest for being at 2424 Delchester Dr.,

l.  On or about June 20, 2006, pursuant to HAVERFORD procedure, James and John Doherty submitted to HANLON WIDDOP a "Petition to Enforce the General Laws of HAVERFORD in Accordance Their Provisions" which HANLON WIDDOP suppressed,

m.  In July, 2006 after HAVERFORD was paid by Mary Lou Doherty the required inspection fee, ANDRIEN refused to inspect 456 Colfax Road,

n. On August 2, 2006, ANDRIEN issued an invalid HAVERFORD inspection report for 722 Lawson Avenue,

o. On August 18, 2006, ANDRIEN issued an invalid HAVERFORD enforcement notice charging Mary Lou Doherty with violation of the Zoning Code at 2424 Delchester Dr.

24. On or about August 28, 2006, ALLSTATE was served with a Writ of Summons filed in Del CCP No. 06-9749, naming it and HAVERFORD and Contributionship, as Defendants.

25. By October 6, 2006 ALLSTATE in its capacity as an insurer should have been investigating and should have known FALCONE/CUCURULLO had directly and proximately caused the foregoing feuding by HAVERFORD's HANLON WIDDOP and ANDRIEN with ALLSTATE's insureds: James Doherty, John Doherty, and Mary Lou Doherty (hereinafter known as: "INSUREDS") which had been ongoing between August 28, 2006 and October 6, 2006, as follows:

a. On September 12, 2006 ANDRIEN caused James Doherty to be found guilty of failing to register WILMOT even though no hearing was held on September 12, 2006, and he knew or should have known no such HAVERFORD ordinance had been enacted by HAVERFORD's Board of Commissioners,

b. On September 12, 2006 in violation of the field report of the Pennsylvania Department of Labor and Industry, (Exhibit "I"), ANDRIEN issued an invalid HAVERFORD enforcement notice

purporting to charge James Doherty with violation of the zoning code at 722 Lawson Avenue,

c.  On September 12, 2006, HANLON WIDDOP knew ANDRIEN was not authorized to act as a HAVERFORD's Building Code Official, (Exhibit "I"), and his doing so was in violation of the provisions of the PUCC,

d.  On September 21, 2006 ANDRIEN issued a citation charging  James Doherty for allegedly failing to obtain a rental license for 722 Lawson Avenue when he knew or should have known he and HANLON WIDDOP had suppressed his applications for rental licenses,

e.  On September 21, 2006 in violation of the provisions of the field report of the Pennsylvania Department of Labor Industry, (Exhibit "I"), ANDRIEN issued a citation against James Doherty for allegedly failing to obtain a building permit for 722 Lawson Avenue when HANLON WIDDOP and ANDRIEN knew that he did not have jurisdiction or authority to act as a Building Code Official,

f.  On October 4, 2006, HANLON WIDDOP knowingly issued an invalid HAVERFORD enforcement notice to Mary Lou Doherty charging her with violation of the zoning code at 456 Colfax Road.

26. On or about October 6, 2006 ALLSTATE was served with a Complaint (hereinafter known as "SECOND COMPLAINT") filed in Del CCP No. 06-9749 brought by James Doherty, John Doherty, and James Doherty, Trustee,

against ALLSTATE, HAVERFORD, and Contributionship. (A true and correct copy is attached hereto and marked Exhibit "K".)

27. On October 6, 2006 ALLSTATE knew or should have known the FOURTH COUNT against ALLSTATE of the SECOND COMPLAINT incorporated the prior allegations of tortuous conduct of HAVERFORD's employees, including its Director, HANLON WIDDOP, and Inspector ANDRIEN.

28. On November 6, 2006 ALLSTATE was served with HAVERFORD's Motion to Dismiss its insureds' tort action against HAVERFORD.

29. On November 6, 2006 ALLSTATE should have been investigating and should have known based on its insureds' allegations against HAVERFORD (Exhibit "K") that FALCONE/CUCURULLO's FIRST COMPLAINT, Exhibit "H" alleging MOLD was present in WILMOT had caused the tortuous conduct of HANLON WIDDOP and ANDRIEN.

30. On or before March 1, 2007, ALLSTATE stated in its Answer to the SECOND COMPLAINT, as an insurer, it had been conducting a reasonable investigation into its insureds' allegations against HAVERFORD and HANLON WIDDOP and ANDRIEN. (A true and correct copy of ALLSTATE's ANSWER with Affirmative Defenses and CROSS CLAIM is attached hereto and marked Exhibit "L").

31. By March 1, 2007, ALLSTATE knew or should have known of the foregoing feuding of HAVERFORD's employees including the feuding which had been ongoing after November 6, 2006 and before March 1, 2007 as follows:

a.  On November 14, 2006 ANDRIEN  issued a citation charging James and John Doherty with  allegedly failing to obtain a rental license  for 2424 Delchester Dr. when he knew or should have known he and HANLON WIDDOP had suppressed his applications for rental licenses,

b.  On November 14, 2006 ANDRIEN  issued a citation charging Mary Lou Doherty with allegedly failing to obtain an inspection of 456 Colfax Road when he knew had failed to inspect,

c.  On February 6, 2007 ANDRIEN  issued two citations for allegedly failing to obtain a rental license and failing to register occupants for 722 Lawson Avenue (1st floor) when he knew or should have known he and HANLON WIDDOP had suppressed his applications for rental licenses,

d.  On February 7, 2007 ALLSTATE knew James Doherty and Mary Lou Doherty applied for rental licenses and inspections for their properties and tendered payment of the fees, and had previously timely provided HAVERFORD with an Environmental Report for WILMOT which ANDRIEN and or HANLON WIDDOP had suppressed.


32. By March 1, 2007, ALLSTATE knew FALCONE/CUCURULLO directly and proximately caused damage to WILMOT, ongoing losses to its INSUREDS resulting from HAVERFORD's refusal to issue their rental licenses, and the feuding of HAVERFORD's employees with its INSUREDS.

33. By March 1, 2007, ALLSTATE in its capacity as insurer knew the tortuous conduct of HAVERFORD's employees including HANLON WIDDOP and ANDRIEN was injuring its INSUREDS and harming the reputation of their rental properties.

34. By March 1, 2007 ALLSTATE in its capacity as an insurer knew or should have known it should have been defending its INSUREDS.

35. By March 1, 2007 ALLSTATE in its capacity as an insurer knew pursuant to 42 Pa.C.S.A. Section 8371 Actions on Insurance Policies, as an insurer it could be found liable to its INSUREDS for its breach of its fiduciary duties unless it could prove their claim was not covered.

36. By March 1, 2007 ALLSTATE in its capacity as insurer knew that HAVERFORD was using the allegations of FALCONE/CUCURULLO that MOLD was present in WILMOT in order to justify the conduct of HANLON WIDDOP and ANDRIEN.

37. On or about March 1, 2007 ALLSTATE in its capacity as insurer decided it had more to gain by siding with HAVERFORD's insinuations that MOLD was present in its INSUREDS' rental properties than by defending its INSUREDS and the reputation of their properties.

38. On March 1, 2007, ALLSTATE in its capacity as an insurer in its ANSWER with Affirmative Defenses (Exhibit "L") sided with FALCONE/CUCURULLO's allegations of MOLD in order to deny coverage under its mold exclusions while admitting in its CROSS CLAIM, Exhibit "L", that it was liable for breaching its fiduciary duties owed to its insureds: James

Doherty, John Doherty and James Doherty, Trustee, as a "joint tort feasor" with HAVERFORD. (ALLSTATE's ANSWER with Affirmative Defenses and CROSS CLAIM , Exhibit "L").

39. On March 27, 2007 ALLSTATE knew FALCONE/CUCURULLO directly and proximately caused HANLON WIDDOP not to *"give"* any rental licenses to James Doherty and John Doherty, Mary Lou Doherty and James A. Doherty for their HAVERFORD PROPERTIES.

40. On or about April 7, 2007, ALLSTATE should have been investigating and should have known The Twenty-fourth Statewide Investigating Grand Jury released its Report (Dauphin CCCP No. 320 M.D. 2005) disclosing its findings of misconduct by HAVERFORD's officials.

41. On or before May 21, 2007, ALLSTATE in its capacity as insurer in breach of its fiduciary duties sided with HAVERFORD's insinuations to the Court that "there was a known history of mold that had not been alleviated" against its INSUREDS.

42. By May 30, 2007, after the action was dismissed against HAVERFORD, ALLSTATE reconsidered its strategy.

43. On May 30, 2007 ALLSTATE in its capacity as an insurer openly admitted that it was clear the negligence and carelessness of FALCONE/CUCURULLO had directly caused damages to WILMOT and the loss of its INSUREDS' HAVERFORD rental licenses.

44. On May 30, 2007, ALLSTATE in its capacity as an insurer openly admitted that the conduct of FALCONE/CUCURULLO was the substantial and contributing factor and the proximate cause of its INSUREDS' damages and its INSUREDS' losses resulting from HAVERFORD's failure to issue rental licenses to its INSUREDS.

45. On May 30, 2007, ALLSTATE in its capacity as an insurer openly admitted it was obligated to indemnify its INSUREDS for their property damages and their losses resulting from HAVERFORD's refusal to issue rental licenses to its INSUREDS.

46. On May 30, 2007, ALLSTATE in its capacity as insurer admitted it knew it had a duty to defend its INSUREDS and it should have been defending them.

47. On May 30, 2007 ALLSTATE in its capacity as insurer filed a Motion for Leave to Join Additional Defendants FALCONE/CUCURULLO in the pending action, No. 06-9749 (hereinafter known as "JOINDER MOTION") seemingly in order to be indemnified by FALCONE/CUCURULLO for all of its INSUREDS' damages and their losses resulting from HAVERFORD's refusal to issue its INSUREDS' rental licenses and court costs. (A true and correct copy is attached hereto and marked Exhibit "M".)

48. On June 11, 2007, ALLSTATE knew that attached to the SECOND COMPLAINT was a true and correct copy of the MOORE LEASE, (Exhibit "A") and that it had received a copy.

49. On June 11, 2007, after the action was remanded back to Delaware County Court of Common Pleas, ALLSTATE in its capacity as insurer proceeded to

file a Joinder Complaint in Del CCP. No. 06-09749 to serve its own interests. (hereinafter known as "INDEMNITY ACTION") (A true and correct copy is attached hereto and marked Exhibit "N").

50. On or before June 11, 2007, ALLSTATE knew the only way it could bring an indemnity action against FALCONE/CUCURULLO would be by falsely alleging an indemnity agreement existed between ALLSTATE's INSUREDS and FALCONE/CUCURULLO.

51. On or before June 11, 2007 ALLSTATE knew that FALCONE/CUCURULLO had claimed that they and Nicole Cucurullo had suffered injuries as a result of their exposure to MOLD and other damages and ALLSTATE had received copy of the letter of Attorney O'Keefe. (Exhibit "D")

52. On June 11, 2007 ALLSTATE in its capacity as an insurer knowingly risked the financial well being of its INSUREDS and James Doherty, Trustee, by falsely stating: "On or about November 15, 2004, Plaintiffs [James Doherty, John Doherty, and James Doherty, Trustee] entered into a written lease agreement with John T. Falcone and Christine Cucurullo for the residence located at 25 W. Wilmot Avenue, Havertown, Pennsylvania." (INDEMNITY ACTION, paragraph 21, Exhibit "N").

53. At all times relevant, ALLSTATE knew in violation of the rules of civil procedure, it had not attached a copy of any such written indemnity agreement to its INDEMNITY ACTION.

54. On June 11, 2007, ALLSTATE in its capacity as an insurer knowingly risked the financial well being of its INSUREDS and James Doherty, Trustee, by falsely stating that commencing November 15, 2004, James Doherty, John Doherty, and James Doherty, Trustee were the Landlords of FALCONE/CUCURULLO. (INDEMNITY ACTION, paragraphs 25 and 35, Exhibit "N".)

55. On June 11, 2007, ALLSTATE in its capacity as an insurer should have reasonably foreseen that its false statements that a Landlord/Tenant relationship existed between FALCONE/CUCURULLO and its INSUREDS and James Doherty, Trustee, would directly and proximately cause FALCONE/CUCURULLO to bring a Landlord/Tenant action against its INSUREDS and James Doherty, Trustee which would risk further stigmatizing the reputation of its INSUREDS and James Doherty, Trustee's investment properties and their financial well being.

56. On June 11, 2007, ALLSTATE in its capacity as an insurer knew or should have reasonably foreseen that ALLSTATE's statements that it was obligated to indemnify James Doherty, John Doherty, and James Doherty, Trustee, for their damages and losses of rent and that they would not be prejudiced would directly and proximately cause FALCONE/CUCURULLO to bring a Landlord/Tenant action for a huge sum against its INSUREDS and James Doherty, Trustee, exacerbating the risk to their financial well being.

57. On or about December 13, 2007, ALLSTATE in its capacity as insurer knew Christine Cucurullo Individually and as Guardian for Nicole Cucurullo and

John Falcone brought a Related action, Del. CCP No. 07-015664 for over $2,125,000.00 claiming its INSUREDS and James Doherty, Trustee, of the Estate of Virginia Moore, deceased, as of November 15, 2004 breached the duties a Landlord owed to FALCONE/CUCURULLO, (hereinafter known as THIRD COMPLAINT"). (A true and correct copy of which is attached hereto and marked Exhibit "O")

58. On May 8, 2008, ALLSTATE in its capacity as an insurer notified its INSURED, John Doherty, that a loss had occurred on December 24, 2005 and that as of May 8, 2008 it was reserving all rights and defenses in conjunction with the policy. (A true and correct copy is attached and marked Exhibit "P".)

59. On May 8, 2008 ALLSTATE in its capacity as an insurer knew that it had caused FALCONE/CUCURULLO to sue its INSUREDS and James Doherty, Trustee, for millions of dollars.

60. On May 8, 2008, ALLSTATE knew FALCONE/CUCURULLO had directly and proximately caused  HANLON WIDDOP *not to give*  to its INSUREDS and James A. Doherty rental licenses for their HAVERFORD PROPERTIES and had caused the foregoing feuding of HAVERFORD employees which was ongoing between August 2, 2007 and May 8, 2008 as follows:

   a. On August 2, 2007 ANDRIEN issued invalid HAVERFORD inspection reports for 722 Lawson Avenue, 2424 Delchester Dr., and 456 Colfax Road,

   b. On August 17, 2007, ANDRIEN wrongfully issued six  invalid HAVERFORD enforcement notices charging James Doherty with

violation of the zoning code at 734 Pennfield [sic] Avenue, 734 Penfield Avenue, 734 Penfield Road [sic], 36 Ralston Avenue, 36 Ralston Road and 36 Ralston Road respectively,

c. On September 28, 2007 ANDRIEN issued three citations against James Doherty and John Doherty for allegedly failing to obtain a rental license, register occupants, and leasing prior to inspection for 1118 Allston Road, when ANDRIEN knew he and HANLON WIDDOP had suppressed their applications for rental licenses,

d. On or about February 19, 2008, HAVERFORD police KELLY and LINDELOW arrested James Doherty, detained him for hours, and falsely charged him with four DUI violations and driving too slow for conditions in order to harass him.

e. Between June 15th and July 8, 2008 HAVERFORD employees came upon 640 Lawson Avenue tore up portions of its rear yard, damaged garden fixtures, broke out glass in its green house and garden houses and broke down portions of the fencing

61. On or before July 9, 2008 ALLSTATE should have been investigating and should have known that its insureds had been defending themselves.

62. On July 9, 2008 ALLSTATE should have been investigating and should have known HAVERFORD's Township Manager Lawrence Gentile (hereinafter "GENTILE") agreed to a STIPULATION agreement with its insureds which after being reduced to writing, signed and approved by the court was entered

of record in Del CCP No. SA 08-361 and SA 07-1495 (hereinafter known as "STIPULATION").  (A true and correct copy is attached hereto and marked Exhibit "Q").

63. By July 9, 2008, ALLSTATE knew or should have known that what happened in Court was not important to HANLON WIDDOP.

64. Contrary to the STIPULATION, after July 9, 2008, HAVERFORD's Township Manager GENTILE and HANLON WIDDOP continued not "giving" ALLSTATE's INSUREDS and James A. Doherty their rental licenses and the foregoing feuding of HAVERFORD's employees continued.

65. Prior to July 10, 2008, ALLSTATE in its capacity of insurer knew it should have been defending its INSUREDS and in bad faith it had not been defending its INSUREDS in breach of its fiduciary duties.

66. By July 10, 2008 ALLSTATE in its capacity of insurer reconsidered its strategy and procured Attorney Doyle to defend the named Defendants and represented to him that it insured all the named Defendants: James Doherty, John Doherty, James Doherty, Trustee, and Mary Lou Doherty in order to cause him to enter his appearance in Del. CCP No. 07-015664 for all the named Defendants without restriction.

67. On July 10, 2008, Attorney Doyle entered his appearance in the Del. CCP action No. 07-015664, for all the named Defendants without restriction without their knowledge or consent.

68. On or before July 28, 2008 ALLSTATE in its capacity as insurer procured Attorney Cavalier and represented to Attorney Cavalier that it insured all the

named Defendants: James Doherty, John Doherty, James Doherty, Trustee, and Mary Lou Doherty in order to cause him to enter his appearance in Del CCP No. 07-015664 for all the named Defendants without restriction.

69. On July 28, 2008, Attorney Cavalier entered his appearance for all the named Defendants without restriction and without obtaining their consent in the Del. CCP action No. 07-015664.

70. By July 28, 2008 ALLSTATE as an insurer should have reasonably foreseen that its statements in its JOINDER MOTION that its INSUREDS would not be prejudiced and its procuring attorneys to enter their appearances for the named Defendants: James Doherty, John Doherty, James Doherty, Trustee, and Mary Lou Doherty without restriction would directly and proximately cause its INSUREDS and James Doherty, Trustee, to reasonably believe that ALLSTATE would compensate them for their property  damages and losses of rent and increased expenses and would defend them in good faith and pay any verdict in favor of FALCONE/CUCURULLO against its INSUREDS and James Doherty, Trustee.

71. On or about September 7, 2008 HAVERFORD employees again came upon 640 Lawson Avenue tore up parts of the rear yard, damaged additional garden fixtures, broke out additional glass in its green house and garden houses and broke down additional fencing.

72. On September 8, 2008, ALLSTATE in its capacity as insurer contrary to its sworn statements to the Court that its INSUREDS and James Doherty, Trustee, would not be prejudiced, revealed instead that it had sided with

FALCONE/CUCURULLO and was using FALCONE/CUCURULLO's allegations of MOLD in their THIRD COMPLAINT against its INSUREDS in support of ALLSTATE's so-called reservation of rights. (A true and correct copy is attached hereto and marked Exhibit "R")

73. On February 17, 2009 ALLSTATE in its capacity as insurer contrary to its sworn statements that its INSUREDS and James Doherty, Trustee, would not be prejudiced, supplemented its so-called reservation of rights in order to make more advantageous use for itself of FALCONE/CUCURULLO's allegations of MOLD against its INSUREDS.  (A true and correct copy is attached hereto and marked Exhibit "S")

74. By March 1, 2009, ALLSTATE should have been investigating and should have known that HAVERFORD's Township Manager GENTILE and HANLON WIDDOP in disregard on the Stipulation had not "*given*" its INSUREDS and James A. Doherty their rental licenses for their HAVERFORD PROPERTIES and she and ANDRIEN had continued feuding.

75. Prior to February 24, 2010, ALLSTATE in its capacity as insurer knew FALCONE/CUCURULLO through Attorney Steinberg had unlawfully used the identity of James A. Doherty without his consent in order to injure its INSUREDS by tying up their individually and jointly held assets.

76. Prior to February 24, 2010 ALLSTATE, in its capacity as an insurer to gain advantage for itself, had sided with FALCONE/CUCURULLO's illegal use of James A. Doherty's identity in order to tacitly cover up ALLSTATE's breach

of its fiduciary duties by procuring attorneys and misleading them to enter their appearances without restriction for the "named Defendants".

77. By February 24, 2010, ALLSTATE, to gain further advantage for itself, blocked attorneys whom it had procured from objecting to the unlawful use by FALCONE/CUCURULLO of the identity of James A. Doherty in order to further FALCONE/CUCURULLO's interests.

78. On February 24, 2010 FALCONE/CUCURULLO moved to consolidate the two actions, Del CCP No. 06-9749 and No. 07-015664 and filed their Motion to Consolidate and Memorandum of Law.

79. On February 24, 2010 ALLSTATE in its position as insurer knew that it had directly and proximately caused FALCONE/CUCURULLO to rely on its statements in its JOINDER MOTION that its INSUREDS and James Doherty, Trustee, would not be prejudiced and its statements in its INDEMNITY ACTION that as of November 15, 2004 a Landlord /Tenant relationship existed between FALCONE/CUCURULLO and its INSUREDS and James Doherty, Trustee.

80. On February 24, 2010 ALLSTATE in its position as insurer believed that it was to its advantage to have directly and proximately caused FALCONE/CUCURULLO and Nicole Cucurullo to have brought their Landlord/Tenant action (the THIRD COMPLAINT) against INSUREDS and, James Doherty, Trustee, based on their allegations of MOLD being present in WILMOT on or before December 23, 2005 in order to use FALCONE/CUCURULLO's action to exclude coverage.

81. By March 1, 2010, ALLSTATE should have been investigating and should have known that HAVERFORD's Township Manager GENTILE and HANLON WIDDOP had disregarded the STIPULATION and refused to "give" to its INSUREDS and James A. Doherty their rental licenses for their HAVERFORD PROPERTIES and ANDRIEN had continued feuding.

82. By March 17, 2010 ALLSTATE in its capacity as insurer knew it had caused FALCONE/CUCURULLO and Nicole Cucurullo to demand payment of a huge amount in excess of two million dollars to settle their action based on mold being present in WILMOT (No. 07-015664).

83. On or before March 17, 2010, ALLSTATE knew in its capacity as an insurer it had been siding with FALCONE/CUCURULLO in order to use their allegations of MOLD against its INSUREDS in order to exclude coverage and reserve its "so-called" rights and escape liability for breach of its fiduciary duties.

84. On March 17, 2010, ALLSTATE's predominant interest in opposing the consolidation of the two actions, No. 06-09749 and No. 07-015664 was to keep its interests as an insurer from being prejudiced.

85. On or before July 2, 2010, ALLSTATE should have been investigating and should have known HAVERFORD Inspector ANDRIEN's feuding was ongoing and he was sending invalid enforcement notice charging James and John Doherty with zoning violations supposedly at 2424 Delchester Rd [sic].

86. By March 1, 2011, ALLSTATE should have been investigating and should have known, contrary to the STIPULATION, HANLON WIDDOP continued not *giving* James Doherty, John Doherty, James A. Doherty and Mary Lou Doherty their rental licenses for their HAVERFORD PROPERTIES and ANDRIEN continued his feuding.

87. By May 9, 2011 ALLSTATE knew or should have known the following had been occurring:

    a.  by October 28, 2005 Nicole Cucurullo had been exposed to mold and other indoor environmental issues while she was attending the Haverford Township Middle School and each time she was absent from school, she had recovered from her recurrent illnesses while staying home at WILMOT, (True and correct copies of Dr. Nelson's medical records are attached hereto and marked Exhibit "T")

    b.  according to the medical records of Dr. Nelson and an allergist, who were examining Nicole Cucurullo and treating her illnesses, they were not provided with a copy of the NAL EAST Report and Nicole had not been tested for any allergic reaction to any type of mold supposedly present in WILMOT.

    c.  according to the medical records of the allergist, Dr. Sharon Sweinberg, who was examining Nicole Cucurullo and treating her illnesses on or about January 19. 2006, she was not provided with a copy of the NAL EAST Report and Nicole had not been tested for any allergic reaction to any type of mold supposedly present in WILMOT.

d.  according to the medical records of the medical providers who were examining Christine Cucurullo and treating any of her illnesses, none of them were provided with a copy of the NAL EAST Report or informed of its substance and she was not tested for any allergic reaction to any type of mold supposedly present in WILMOT.

e.  according to the medical records of the medical providers who were examining John Falcone and or treating any of his illnesses, none of them were provided with a copy of the NAL EAST Report or informed of its substance and he was not tested for any allergic reaction to any type of mold supposedly present in WILMOT.

88. On or before May 9, 2011 ALLSTATE should have been investigating and should have known that on March 2, 2006, Christine Cucurullo and Dr. Nelson certified that Nicole's "repeated illnesses-extreme mold exposure" had commenced on or about October 28, 2005 prior to the death of Virginia Moore on November 30, 2005 while Nicole was attending the HAVERFORD Middle School. (A true and correct copy is attached hereto and marked Exhibit "U")

89. On May 9, 2011, ALLSTATE knew Mary Lou Doherty had not owned WILMOT at any time and had not leased it to anyone at any time and the action against her, No. 07-015664 should have been dismissed.

90. On May 9, 2011, ALLSTATE knew WILMOT did not pass on the death of Virginia Moore to James Doherty, John Doherty, James Doherty, Trustee of

the Estate of Virginia Moore, deceased, and Mary Lou Doherty and they had not leased WILMOT to anyone on November 15, 2004.

91. On May 9, 2011 ALLSTATE in its capacity of insurer to gain further advantage for itself stated to each of its INSUREDS that the date of loss was "December 24, 2005" and "A statement of damages has now been received. The damages claimed are: $2,125,000.00. The applicable insurance coverages available under the captioned policy is $ per person, $1000000.00 per occurrence. The amount of damages claimed in the suit is in excess of the protection afforded under your policy. If the verdict is in excess of the policy's limit of liability, you will be personally liable for such excess." (A true and correct copy if attached and marked Exhibit "V").

92. On May 9, 2011 ALLSTATE used its capacity as insurer to misrepresent to its INSUREDS that they would be liable for the bulk of the verdict contrary to its prior statement that they would not be prejudiced, Exhibit "M", and even though it knew it had caused FALCONE/CUCURULLO and Nicole Cucurullo to bring the action against its INSUREDS and James Doherty, Trustee, based on ALLSTATE's false statements that James Doherty, John Doherty and James Doherty, Trustee, had leased WILMOT to FALCONE/CUCURULLO on November 15, 2004 and were their Landlords and had exacerbated their claim by procuring attorneys to enter their appearance without restriction for its INSUREDS and James Doherty, Trustee.

93. On August 31, 2011, ALLSTATE should have been investigating and should have known of HAVERFORD's employees ongoing feuding with its INSUREDS and that Inspector ANDRIEN had issued three invalid code violation notices against James and John Doherty.

94.  On September 14, 2011, ALLSTATE should have known James Doherty and John Doherty in order to defend themselves, had filed a Petition in response to HAVERFORD's invalid notices which was suppressed by HAVERFORD employees.

95. After February 9, 2006 ALLSTATE knew it had breached its fiduciary duties that it owed to its INSUREDS by not defending its INSUREDS against the allegations of FALCONE/CUCURULLO starting on February 9, 2006 on receipt of its INSUREDS' NOTICE OF CLAIM, Exhibit "G" and properly investigating their claim but had sided with FALCONE/CUCURULLO in order to use their allegations of MOLD against their INSUREDS to insulate ALLSTATE from liability.

96. By January 13, 2012, ALLSTATE knew that in its capacity as an insurer in order to use FALCONE/CUCURULLO's allegations of MOLD to its own advantage, it had sided with HAVERFORD risking the financial well being of its INSUREDS and the reputation of their rental properties, had misrepresented a Landlord Tenant relationship existed between its INSUREDS and James Doherty, Trustee, and  FALCONE/CUCURULLO causing FALCONE/CUCURULLO and Nicole Cucurullo to bring their action in Del CCP No. 07-015664 for millions of dollars against its INSUREDS and

James Doherty, Trustee, and that the adverse actions against its INSUREDS had become protracted.

97. By January 13, 2012 ALLSTATE and the attorneys, it procured, knew ALLSTATE's INDEMNITY ACTION against FALCONE/CUCURULLO should have been withdrawn, the THIRD COMPLAINT against its INSUREDS should have been dismissed, and it should have been defending its INSUREDS against adverse action of HAVERFORD and enforcing the STIPULATION against HAVERFORD.

98. On January 19, 2012 ALLSTATE in breach of its fiduciary duties continued to put its interests as an insurer ahead of those of its INSUREDS and persisted in siding with FALCONE/CUCURULLO in order to use their MOLD allegations against its INSUREDS to reserve its rights and deny coverage.

99. On February 3, 2012, contrary to the STIPULATION, ALLSTATE should have been investigating and should have known HAVERFORD's Township Manager GENTILE and HANLON WIDDOP would not issue rental licenses to its INSUREDS and James A. Doherty for their HAVERFORD PROPERTIES and it should have been defending its INSUREDS.

100. By February 21, 2012, the attorneys whom ALLSTATE had procured to supposedly represent its INSUREDS and James Doherty, Trustee, the named Defendants in No. 07-015664 were doing whatever served the interests of ALLSTATE without seeking the agreement of their so-called clients, the INSUREDS and James Doherty, Trustee.

101.   At all times, ALLSTATE in bad faith in breach of its fiduciary duties which it owed to its INSUREDS has knowingly placed its interests before those of its INSUREDS knowing as a result  of its siding with HAVERFORD and   FALCONE/CUCURULLO   the   reputation   of   its   INSUREDS' HAVERFORD PROPERTIES was stigmatized, the financial  well being of its INSUREDS was put at risk, its INSUREDS' HAVERFORD PROPERTIES were closed down, its INSUREDS were losing rental income from their HAVERFORD PROPERTIES and incurring increased maintenance costs and expenses, the   investment value of their HAVERFORD PROPERTIES had declined, and its INSUREDS' business interests were being otherwise injured. (where HAVERFORD PROPERTIES includes the following properties:

     a.  25 W. Wilmot Avenue

     b.  36 Ralston Avenue

     c. 2424 Delchester Driveway

     d.  1118 Allston Road

     e. 722 Lawson Avenue (1st and 2nd Floor)

     f.  755 Lawson Avenue

     g. 701 Penfield Avenue

     h. 734 Penfield Avenue

     i.  456 Colfax Road,

     j. 640 Lawson Avenue (1st and 2nd Floor))

102.    At all times relevant, ALLSTATE knew that in bad faith it put its own interests before those of its INSUREDS, and had failed to compensate its INSUREDS for their property damage, for their losses of rent, increased expenses, and the decline in the value of their HAVERFORD PROPERTIES and to defend them in good faith against adverse actions of FALCONE/CUCURULLO and HAVERFORD.

103.    At all time relevant ALLSTATE knew that in bad faith, it had caused the action of FALCONE/CUCURULLO and Nicole Cucurullo for an inflated amount in the millions of dollars to be brought against its INSUREDS and James Doherty, Trustee, No. 07-015664, and caused James A. Doherty to be involved, in order to further its own interests while risking their financial well being.

104.    As a direct and proximate result of the foregoing ALLSTATE in its capacity as insurer in bad faith has breached the fiduciary duties it owes to James Doherty, John Doherty, and Mary Lou Doherty, James Doherty, Trustee, and James A. Doherty.

105.    As a direct and proximate result of ALLSTATE in bad faith breaching its fiduciary duties, James Doherty, John Doherty, James Doherty, Trustee, James A. Doherty, and Mary Lou Doherty have been forced to expend time and money defending themselves against adverse actions of HAVERFORD's employees and FALCONE/CUCURULLO and Nicole Cucurullo, have been interfered with or frustrated in defending themselves against FALCONE/CUCURULLO and Nicole Cucurullo by attorneys procured by

ALLSTATE, have suffered losses of rent, increased expenses and losses in the investment value of their HAVERFORD PROPERTIES, and have had to endure having the reputations of their properties stigmatized, and having their financial well being risked by ALLSTATE.

106.    The Plaintiffs are entitled to compensatory damages in excess of $2,125,000.00.

107.    Pursuant to 42 Pa. C.S.A. Section 8371, the Plaintiffs: James Doherty, John Doherty, James Doherty, Trustee, James A. Doherty, and Mary Lou Doherty, are entitled to an award of interest on the amount of the claim from the date of the claim, February 9, 2006, in an amount equal to the prime rate of interest plus 3%, an award of punitive damages, court costs and attorney fees.

WHEREFORE the Plaintiffs respectfully request judgment be entered in their favor against ALLSTATE in an amount in excess of $2,125,000.00 together with interest on the amount of the claim from the date of the claim, February 9, 2006, in an amount equal to the prime rate of interest plus 3%, an award of punitive damages, court costs and attorney fees.

Mary Lou Doherty, Esquire and Pro se

MARY LOU DOHERTY, Esquire 20568

Pro Se and Attorney for Plaintiffs James Doherty,
John Doherty, and James A. Doherty
P.O. Box 12,
Haverford, Pa. 19041
610-853-3870

| | |
|---|---|
| **JAMES DOHERTY, JOHN DOHERTY, JAMES DOHERTY, TRUSTEE, JAMES A. DOHERTY and MARY LOU DOHERTY, Plaintiffs,**<br><br>v.<br><br>**ALLSTATE INSURANCE COMPANY, Defendant.** | **COURT OF COMMON PLEAS OF DELAWARE COUNTY PENNSYLVANIA**<br><br>**CIVIL ACTION**<br><br>**NO.** |

## VERIFICATION

The averment of facts contained in the foregoing are true and correct based upon signer's knowledge, or information, and belief. This verification is made subject to the penalties of 18 Pa.C.S.A. section 4904 relating to unsworn falsifications to authorities.

DEC-14-2007 FRI 11:40 AM HAVERFORD HIGH SCHOOL     FAX NO. 6108535952

*Exhibit*

*A*

## Residential Lease

This Agreement, MADE on month November
day ..15...................., year ..2007....
between

**1. Landlord**     Virginia Moore, 701 Penfield Avenue, Havertown, Pa 19083 hereinafter called Landlord
and     610 - 449 - 3313

**Tenant**     John Falcone and Christine Casarella

hereinafter called Tenant. Each tenant is responsible to pay the full amount of rent stated in
the lease below.

**2. Premises**     Landlord and Tenant agrees to rent  25 W. Wilmot Avenue, Havertown, Pa. 19083

In the County of __Delaware_____, State of Pennsylvania consisting of ..................
.. nine rooms, two bathrooms, with porch home...................................
hereinafter referred to as Leased Premises, upon the following terms and conditions:

**3. Conditions**     Tenant agrees and if more than one tenant, each tenant agrees to pay to landlord rent under
following terms and conditions:                                          1,275.00
(a) Total rent for entire length of lease payable to Landlord..........$ 12 × 1,275.00
(b) Rent shall be paid by tenant in advance each month on the .. 1st .......... day
beginning month..Dec. first Dec 2007
in amount of ........................................................$ 1,275.00
(c) Rent paid in advance for last month's rent ...........................$_____
(d) Partial payment of rent  :
until first regular due date, if any Nov 19. ,            300.00 pmt
................................................................$ 200.00
(e) Security deposit ...................................................$ 1,275.00
(f) Late charge if rent not paid by tenant
within grace period of five (5) days ..................................$_____50.00__
(g) Length of this lease and each renewal term ....... one year ...........
(h) Beginning date of this lease:
..........................Normal lease Dec. 19 2007....
(i) Ending date of this lease unless renewed for another year:
....Dec. 18st    of each year..................................
(j) This lease does not end on the ending date indicated above in paragraph (I) unless
Landlord or Tenant give sixty days written notice to the other prior to the ending date of
each renewal term.
(k) Sixty (60) days written notice prior to its renewal by Landlord or Tenant is required to

Tenant Initial

Page 1 of 7

**EXHIBIT
"A"**

## Residential Lease

change any renewal terms or conditions; otherwise, this lease renews under the same terms and conditions for another renewal term of one year.

(l)  The length of the renewal term of this lease if not ended by either party as required in paragraph (j) is one year.

(m) Premises may be occupied only by Tenants who sign lease

(n)  Occupants allowed under this lease is restricted to those specified by zoning

(o)  Payments to be made promptly (without being demanded) by tenant to Landlord at the following address: 701 Penfield Avenue, Havertown, Pa. 19083

(p)  For the leased premises:

        Tenant will pay for:

                Electricity, Water and sewer, Gas, heating fuel, furnace cleaning Cleaning and Extermination

                Trash and or solid waste fees, Lawn mowing, leaf and brush removal, maintaining drains cleaned out, and exterior maintenance including snow removal and keeping walks clean and clear of debris.

Tenant agrees she or he may paint or redecorate leased premises without prior written permission of Landlord where the work must be done in a workmanlike manner. Tenant agrees any furnishings provided by Landlord is a convenience of Tenant and Landlord is not liable for any loss or damage to Tenant arising out of use of premises or its furnishings. The use of any of the furnishings is revocable by Landlord and is not part of the consideration of the rent. Tenant is responsible for maintaining any appliances in good working order. Tenant agrees not to remove any furnishings from the leased premises at any time and to leave them where they are situated within the property in good repair and order.

**4. Effect of Undelivered Lease**

The Landlord agrees, not to accept any rent under this lease until this lease is signed. Payment of rent or security deposit by Tenant to Landlord shows immediately Tenant has read and signed this lease and has received a copy and has agreed to the terms stated in this lease including agreeing to pay all rent stated in the lease.

**5. Inability to Give Possession**

If Landlord is unable to give the Tenant possession of the leased premises at the beginning date of the lease, for any reason not caused directly by the Landlord, the Tenant can delay acceptance of possession until the Landlord is able to give possession. Rent is not owed until the Landlord gives possession. Landlord is not responsible for damages to Tenant where failure to deliver possession is due to conditions beyond Landlord's control including refusal of prior tenant to vacate or remove possessions or Landlord's inability to complete repairs, alterations, or improvements.

**6. Smoke Detectors**

a)  Installed smoke detectors in the leased premises: (1) Tenant acknowledges she or he is responsible for providing and servicing smoke detectors and is familiar with procedures needed to test the smoke detectors in the Leased Premises and in the building of which the Leased Premises is a part. (2) Tenant acknowledges that Tenant fully understands how to test the smoke detectors. (3) Tenant promises to test monthly or more

Tenant Initial:

Page 2 of 18

DEC-14-2007 FRI 11:41 AM HAVERFORD HIGH SCHOOL    FAX NO. 6108535952    P. 06

## Residential Lease

frequently, as recommended by the manufacturer, all smoke detectors in and on the leased premises.

b) Tenant agrees to notify the Landlord immediately in writing if any smoke detector is found not working for any reason. Tenant agrees to pay for and keep fresh batteries in each smoke detector in the leased premises.

c) Tenant agrees to pay any loss or damage incurred by the Landlord that results from Tenant's failure to comply with any part of this paragraph.

**7. Destruction or Damage**

(a) The Tenant will notify Landlord promptly within one day of the condition if the building or contents is destroyed or damaged. If the damage is to such an extent that the leased premises is completely unlivable, the Tenant may: (1) immediately move out if within 24 hours of damage after notifying the Landlord that the lease is ended and returning the keys. (2) If continued occupancy is permitted by the applicable Pennsylvania law or code, continue to occupy that part of the leased premises still usable without any decrease in the rent.

(b) If the lease is ended the Landlord will return the security deposit in accordance with this lease.

(c) The Tenant is and remains responsible for their own negligence and the negligence of their guests, family or any others they allow in or on the premises.

(d) Tenant is responsible for any repairs after commencement of lease including broken windows, appliances, repairing locks, keeping drains open and free or any other matters arising out of Tenant's use or possession.

**8. No Pets**

Tenant will not keep any pets on the property, or in the building, without first getting the written permission of the Landlord except ...none .........
Tenant is absolutely liable for any damage caused by Tenant's pet irrespective of negligence or cause.

**9. Tenant Premises**

The Tenant agrees that Tenant and all persons on the premises with Tenant's consent will:

a) comply with the appropriate Pennsylvania building and housing codes that apply to Tenants including maximum number of occupants and student

b) dispose from leased premises all trash, garbage, rubbish, and requirements of zoning ordinances;

c) keep the leased premises clean and safe; other waste in the manner established by Landlord and appropriate code;

d) no large items are to be left on premises but must be disposed of by Tenant directly; Tenant is responsible for cartage of any item over twenty (20) pounds or trash that does not fit in trash can;

e) use all electrical, plumbing sanitary, heating ventilating, air conditioning, cooking and other facilities and appliances so as not to cause damage to premises or interfere with use by other Tenants; all windows, storm windows, and doors are to be kept closed during the heating season;

f) not deliberately or negligently destroy damage or remove any part of the premises or, damage the property containing the premises or any part leased to others, or knowingly

Tenant initial:

Page 3 of 18

## Residential Lease

permit his family, guests or others to do so;

g) conduct himself or herself in a manner that will not unreasonably disturb his or her neighbors peaceful enjoyment of their premises or property; if another Tenant complains about Tenant more than twice, Landlord may terminate this lease if complaints are reasonably founded;

h) make no alteration to the premises including but not limited to painting, rebuilding, removing, or repairing without the prior written consent of the Landlord. Unless the Landlord gives written permission to remove an alteration, such alteration will be the property of the Landlord at no expense to Landlord;

i) promptly notify the Landlord of all necessary repairs in writing by certified mail with Return Receipt Requested;

j) neither keep nor store hazardous or combustible materials on or in the leased premises;

k) no barbecue or outdoor cooking appliances are permitted whatsoever to be used on porches or interior of house;

l) give immediate access to the leased premises to the Landlord, his or her agents, or prospective Tenants for any reasonable and lawful purpose, including inspecting, repairing or showing the premises including for emergencies;

m) allow the Landlord, his agent, contractor, or prospective tenants to inspect, repair, or make improvements to the premises during the lease term.

n) give up possession peaceably at the ending date or proper earlier termination of this lease with premises cleaned and any damages caused by Tenant previously repaired and all Tenant's property removed; and keys including any mail box keys returned to Landlord on or before vacating; Landlord is not liable for any loss or damage to any property Tenant left in the leased premises. If after Tenant vacates or during any period rent is unpaid, the Tenant leaves property in the premises, Landlord may treat such property as abandoned and dispose of it without any liability whatsoever.

o) comply with all rules and regulations attached if any.

p) if Tenant vacates or removes her or his possessions other than in the ordinary course of occupancy from the premises prior to the expiration of the lease, all rent due under the lease is immediately due and payable without demand to Landlord.

q) Tenant agrees he or she will insure at his or her own expense himself or herself and his or her property for any injury or loss to himself or herself, his or her guests, invitees, agents, or any other person and his or her property or that of others on premises where tenant agrees landlord is not liable for any injury or damages whatsoever whether or not covered by insurance.

r) Tenant agrees to obtain insurance at tenant's expense to pay for all injuries, damages or claims whatsoever arising out of lease during term of lease or occupancy of premises and hold Landlord harmless.

10. Landlord    The Landlord agrees to: if the Landlord is required to provide heat then a minimum
Promises      temperature of 68 degrees will be supplied continuously from October first until April thirtieth as practical. This paragraph will not apply where failure to provide heat is due to circumstances beyond the Landlord's control or due to malfunction of the heating unit or controls.

Tenant Initial:

Page 4 of 18

## Residential Lease

a) Landlord does not have to make repairs made necessary by unreasonable, negligent or intentional conduct of Tenant or any person on the premises with Tenant's consent.

**11. Landlord's Remedies**

a) Landlord may file a complaint without prior notice or demand for rent to evict the Tenant if the Tenant has failed to pay rent or any other charges provided for in this lease. At that time this lease will end at Landlord's option. Notice of any legal proceedings may be given by Landlord to Tenant by certified mail or hand delivery to address of leased premises. Any other process may be served on Tenant by notice sent to Tenant by certified mail to address of leased premises. Tenant agrees to accept all certified mail addressed to her or him.

b) If the Tenant should fail to perform any of his or her obligations under this lease other than the payment of rent, the Landlord will give the Tenant written notice informing the Tenant of the nature of objectionable conduct. Landlord may then terminate the lease and/or seek damages and/or eviction at her or his option if the conduct is not immediately corrected by Tenant.

c) The remedies given to the Landlord in this Section including ending the lease and taking back possession of the leased premises are not the Landlord's only remedies. The Landlord can still take any other actions to collect rent, charges, damages, or any other money that Landlord is owed under this lease and to seek any other remedies allowed by law.

d) Tenant is responsible for and agrees to compensate Landlord for legal fees of fifteen (15)% of any judgment and costs and to pay Landlord a commission of six (6)% of the outstanding rent or an amount equal to the security deposit as stipulated costs for re-letting the premises to mitigate damages for loss of rent, whichever is larger. If the tenant refuses or fails to pay rent or vacates the premises prior to the end of the lease term, the landlord may retain the security deposit as liquidated damages.

**12. Tenant's Remedies for Lessor's Unlawful Removal**

If the Landlord unlawfully removes the Tenant or the Tenant's possessions from the leased premises, or excludes the Tenant from the premises for any reason or cause, Tenant's only remedies are within five days either to seek to regain possession lawfully or to end the lease giving Landlord written notice and returning all keys; otherwise, lease may continue at Landlord's option with no abatement of rent. Tenant must give landlord notice of any claim or action against landlord within ten days of its arising and may only assert a claim against landlord if it is commenced within thirty days of such claim arising.

**13. Security Deposit**

The security deposit to be held in escrow provided the Tenants have given Landlord her or his tax identification number.

a) Tenant may not apply a security deposit toward any rent payment without written consent of the Landlord.

b) The security deposit may be applied by the Landlord to unpaid rent and to all damages to premises except Tenant is not responsible for normal wear and tear occurring during her or his lease.

c) After the Tenant moves out all keys must have been returned to the Landlord by certified mail with Return Receipt Requested in order to terminate the lease or

Tenant Initial:

*Page 5 of 8*

## Residential Lease

surrender possession. The Tenant must have given the Landlord his new address in writing by certified mail with Return Receipt Requested by the time he or she surrenders possession or otherwise terminates the lease.

d) the Landlord, within (30) days thereafter of actual receipt of keys and Tenant's new address, must provide the Tenant with a written list of any deductions for damages, late charges, and unpaid rent, and return the balance of the security deposit only if the lease terminated at the end of its term stated in this agreement and all rent and late fees have been paid in full and all other obligations of Tenant were fulfilled.

e) date of receipt of keys to the premises by Landlord is the earliest date the premises will be deemed to have been surrendered to Landlord.

f) Tender or return of security deposit by Landlord relieves Landlord from any and all claims against Landlord

g) Tender or return of security deposit by landlord is sufficient by mailing a check to last known address.

14. Condemnation

If any part of the leased premises is taken by any authority having power to condemn, these lease will, as to the part condemned, automatically terminate as of the date being condemned and the rent will be reduced proportionately to the part condemned. If the part condemned makes the premises unusable for Tenant's purposes, Tenant may end this lease. The rent will cease if the entire leased premises is condemned. No part of any condemnation award (money for taken property) will belong to the Tenant. These terms also apply if a sale or other transfer of the premises, or part of the premises is made instead of, or to avoid condemnation proceedings. Upon any condemnation, sale, or other transfer of title to property, the Tenant must peaceably give up possession of the leased premises, or the part condemned. If the tenant does not surrender the premises, the Landlord has all the remedies set forth in this lease.

15. Subleasing and Assignment (This means anyone taking over Tenant's or Landlord's rights under this lease for any reason)

This lease will be binding upon, the respective heirs, executors, administrators, successors and assigns of the parties. The tenant will not assign this lease or sublet the leased premises, or any part of the premises without the prior written consent of Landlord. Any notice or demand made by Landlord on any of the Tenants is binding on all Tenants and will be treated as notice on all Tenants. Any statement, representation or notice given by one of the Tenants to Landlord may be treated by Landlord as binding on all other Tenants. Any notice given by Landlord may be by ordinary mail, hand delivery and may be oral. This lease is the only binding agreement between the parties. No modification or changes may be made to it enforceable against Landlord unless in writing, signed by Landlord and supported by prior payment of monetary consideration paid to Landlord by Tenant. Each and every tenant if there is more than one is responsible for full performance of the terms of lease and is not excused if another tenant refuses or fails to perform his or her obligations or comply with the lease.

16. Captions

The captions used in this lease are for the purpose of convenient reference only and are not intended to express the full meaning of the clauses they accompany.

Tenant Initial:

Page 6 of 6

## Residential Lease

| 17. Entire Agreement | Tenant acknowledges this lease consisting of seven (7) pages was given to her or him read and review with anyone of her or his choosing prior to signing. Tenant understands terms of the lease and agrees the writing is a good faith compliance with plain langu requirements. This lease represents the final and complete agreement between the Land and Tenant. Any oral or written promise regarding the leased premises made by either p before the signing of this lease and not included in this lease is not enforceable. Signing this lease by Tenant is an admission that all-blanks were filled in, that Tenant was give copy, and that the copy given to the Tenant conforms to that of the Landlord. T agreement is understood and agreed as binding on each of the undersigned and was sig and sealed by each to acknowledge agreement to its terms. |

_____ (seal)   ............   (da
(Landlord)
Virginia Moore

_____ (seal)   ............   (da
(Tenant)

_____ (seal)   Nov. 15, 2
(Tenant)

_____ (seal)   ............   (da
(Tenant)

Tenant Initial:

Page 7 of 7

DEC-14-2007 FRI 11:42 AM HAVERFORD HIGH SCHOOL      FAX NO. 6108535952                P. 11

Disclosure of Information on Lead-Based Paint and/or Lead-Based Paint Hazards

**Lead Warning Statement**
*Housing built before 1978 may contain lead-based paint. Lead from paint, paint chips, and dust can pose health hazards if not managed properly. Lead exposure is especially harmful to young children and pregnant women. Before renting pre-1978 housing, lessor must disclose the presence of known lead-based paint and/or lead-based paint hazards in the dwelling. Lessees must also receive a federally approved pamphlet on lead poisoning prevention.*

**Lessor's Disclosure**
(a)  Presence of lead-based paint and/or lead-based paint hazards (check (i) or (ii) below):

    (i) _____ Known lead-based paint and/or lead-based paint hazards are present in the housing (explain).

    _____

    _____

    (ii) _____ Lessor has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

(b)  Records and reports available to the lessor  (check (i) or (ii) below):

    (i) _____ Lessor has provided the lessee with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below).

    _____

    (ii) _____ Lessor has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

**Lessee's Acknowledgment (initial)**
(c) _____ Lessee has received copies of all information listed above.
(d) _____ Lessee has received the pamphlet *Protect Your Family from Lead in Your Home.*

**Agent's Acknowledgment (initial)**
(e) _____ Agent has informed the lessor of the lessor's obligations under 42 U.S.C. 4852(d) and is aware of his/her responsibility to ensure compliance.

**Certification of Accuracy**
The following parties have reviewed the information above and certify, to the best of their knowledge, that the information they have provided is true and accurate.

_____ _____   Lessor _____ 4/15/04
Lessor                   Date                                      Date

_____ _____   Lessee _____ _____
Lessee                   Date                                      Date

_____ _____   Agent _____ _____
Agent                    Date                                       Date

8y 8

Disclosure of Information on Lead-Based Paint and/or Lead-Based Paint Hazards

**Lead Warning Statement**
*Housing built before 1978 may contain lead-based paint. Lead from paint, paint chips, and dust can pose health hazards if not managed properly. Lead exposure is especially harmful to young children and pregnant women. Before renting pre-1978 housing, lessors must disclose the presence of known lead-based paint and/or lead-based paint hazards in the dwelling. Lessees must also receive a federally approved pamphlet on lead poisoning prevention.*

**Lessor's Disclosure**
(a) Presence of lead-based paint and/or lead-based paint hazards (check (i) or (ii) below):

   (i) _____ Known lead-based paint and/or lead-based paint hazards are present in the housing (explain).

_____

   (ii) _____ Lessor has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

(b) Records and reports available to the lessor (check (i) or (ii) below):

   (i) _____ Lessor has provided the lessee with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below).

_____

   (ii) _X_ Lessor has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

**Lessee's Acknowledgment (initial)**
(c) _____ Lessee has received copies of all information listed above.
(d) _X_ Lessee has received the pamphlet *Protect Your Family from Lead in Your Home.*

**Agent's Acknowledgment (initial)**
(e) _____ Agent has informed the lessor of the lessor's obligations under 42 U.S.C. 4852(d) and is aware of his/her responsibility to ensure compliance.

**Certification of Accuracy**
The following parties have reviewed the information above and certify, to the best of their knowledge, that the information they have provided is true and accurate.

| Lessor | Date | Lessor | Date |
|---|---|---|---|
| *(signature)* | | *(signature)* | 11/15/04 |
| Lessee | Date | Lessee | Date |
| *(signature)* | | | |
| Agent | Date | Agent | Date |

8y8

**Allstate Indemnity Company**



## AMENDED
# Landlords Package
# Policy Declarations

## *Summary*

| | | |
|---|---|---|
| **NAMED INSURED(S)**<br>John & James Doherty<br>701 Penfield Avenue<br>Havertown PA 19083-4121 | **YOUR ALLSTATE AGENT IS:**<br>McKeon Agency Inc<br>2525 Haverford Rd 1F<br>Ardmore PA 19003 | **CONTACT YOUR AGENT AT:**<br>(610) 642-9919 |
| **POLICY NUMBER**<br>9 08 879294 12/24 | **POLICY PERIOD**<br>Begins on Dec. 24, 2005<br>at 12:01 A.M. standard time,<br>with no fixed date of expiration | **PREMIUM PERIOD**<br>Dec. 24, 2005 to Dec. 24, 2006<br>at 12:01 A.M. standard time |

**LOCATION OF PROPERTY INSURED**
25 West Wilmot Avenue, Havertown, PA 19083-4623

## *Total Premium for the Premium Period*   *(Your bill will be mailed separately)*

| | |
|---|---|
| Premium for Property Insured | $759.39 |
| **TOTAL** | **$759.39** |

The portion of the total premium shown above that is attributable to coverage for losses caused by "acts of terrorism" to which the federal Program established by the "Terrorism Risk Insurance Act of 2002" applies is $0.00.  SEE THE ENCLOSED "POLICYHOLDER DISCLOSURE NOTICE OF TERRORISM INSURANCE COVERAGE" -- AP3337.

*Your policy change(s) are effective as of Mar. 25, 2006*

Exh.
B.





**Allstate Indemnity Company**

AMENDED

# Landlords Package
# Policy Declarations

## Summary

| NAMED INSURED(S) | YOUR ALLSTATE AGENT IS: | CONTACT YOUR AGENT AT: |
|---|---|---|
| John Doherty | McKeon Agency Inc | (610) 642-9919 |
| 701 Penfield Avenue | 2525 Haverford Rd 1F | |
| Havertown PA 19083-4121 | Ardmore PA 19003 | |

| POLICY NUMBER | POLICY PERIOD | PREMIUM PERIOD |
|---|---|---|
| 9 08 879296 12/24 | Begins on Dec. 24, 2005 | Dec. 24, 2005 to Dec. 24, 2006 |
| | at 12:01 A.M. standard time, | at 12:01 A.M. standard time |
| | with no fixed date of expiration | |

**LOCATION OF PROPERTY INSURED**
36 Ralston Avenue, Havertown, PA 19083-2209

## Total Premium for the Premium Period   *(Your bill will be mailed separately)*

| | |
|---|---|
| Premium for Property Insured | $628.30 |
| **TOTAL** | **$628.30** |

The portion of the total premium shown above that is attributable to coverage for losses caused by "acts of terrorism" to which the federal Program established by the "Terrorism Risk Insurance Act of 2002" applies is $0.00. **SEE THE ENCLOSED "POLICYHOLDER DISCLOSURE NOTICE OF TERRORISM INSURANCE COVERAGE" -- AP3337.**

*Your policy change(s) are effective as of Dec. 31, 2005*



PROP  *016063/0512305s3920450402*

Information as of
December 28, 2005        Pr..

**Allstate Indemnity Company**



## AMENDED

# Landlords Package
# Policy Declarations

## Summary

| NAMED INSURED(S) | YOUR ALLSTATE AGENT IS: | CONTACT YOUR AGENT AT: |
|---|---|---|
| John Doherty | McKeon Agency Inc | (610) 642-9919 |
| 701 Penfield Avenue | 2525 Haverford Rd 1F | |
| Havertown PA 19083-4121 | Ardmore PA 19003 | |

| POLICY NUMBER | POLICY PERIOD | PREMIUM PERIOD |
|---|---|---|
| 9 08 879291 12/24 | Begins on Dec. 24, 2005 | Dec. 24, 2005 to Dec. 24, 2006 |
| | at 12:01 A.M. standard time, | at 12:01 A.M. standard time |
| | with no fixed date of expiration | |

**LOCATION OF PROPERTY INSURED**
2424 Delchester, Havertown, PA 19083-1128

### Total Premium for the Premium Period   (Your bill will be mailed separately)

| | |
|---|---|
| Premium for Property Insured | $763.37 |
| **TOTAL** | **$763.37** |

The portion of the total premium shown above that is attributable to coverage for losses caused by "acts of terrorism" to which the federal Program established by the "Terrorism Risk Insurance Act of 2002" applies is $0.00.  **SEE THE ENCLOSED "POLICYHOLDER DISCLOSURE NOTICE OF TERRORISM INSURANCE COVERAGE" -- AP3337.**

*Your policy change(s) are effective as of Dec. 24, 2005*



PNBP *01000370601165501967050Z*

Information as of
January 19, 2006

**Page 1**

PA572AMD



**Allstate Indemnity Company**



# AMENDED
# Landlords Package
# Policy Declarations

## *Summary*

| NAMED INSURED(S) | YOUR ALLSTATE AGENT IS: | CONTACT YOUR AGENT AT: |
|---|---|---|
| John Doherty<br>701 Penfield Avenue<br>Havertown PA 19083-4121 | McKeon Agency Inc<br>2525 Haverford Rd 1F<br>Ardmore PA 19003 | (610) 642-9919 |

| POLICY NUMBER | POLICY PERIOD | PREMIUM PERIOD |
|---|---|---|
| 9 08 878077 12/23 | Begins on Dec. 23, 2005<br>at 12:01 A.M. standard time,<br>with no fixed date of expiration | Dec. 23, 2005 to Dec. 23, 2006<br>at 12:01 A.M. standard time |

LOCATION OF PROPERTY INSURED
1118 Allston Road, Havertown, PA 19083-3816

## *Total Premium for the Premium Period* *(Your bill will be mailed separately)*

| | |
|---|---|
| Premium for Property Insured | $933.19 |
| **TOTAL** | **$933.19** |

The portion of the total premium shown above that is attributable to coverage for losses caused by "acts of terrorism" to which the federal Program established by the "Terrorism Risk Insurance Act of 2002" applies is $0.00.  SEE THE ENCLOSED "POLICYHOLDER DISCLOSURE NOTICE OF TERRORISM INSURANCE COVERAGE" -- AP3357.

*Your policy change(s) are effective as of Dec. 23, 2005*



PRIP *5109037000116530019640502*

Information as of
January 16, 2006

Page 1

PA073AMD

**Allstate Indemnity Company**


Allstate
You're in good hands.

## AMENDED

# Landlords Package
# Policy Declarations

## *Summary*

| | | |
|---|---|---|
| **NAMED INSURED(S)**<br>John Doherty<br>701 Penfield Avenue<br>Havertown PA 19083-4121 | **YOUR ALLSTATE AGENT IS:**<br>McKeon Agency Inc<br>2525 Haverford Rd 1F<br>Ardmore PA 19003 | **CONTACT YOUR AGENT AT:**<br>(610) 642-9919 |
| **POLICY NUMBER**<br>9 08 878076 12/23 | **POLICY PERIOD**<br>Begins on Dec. 23, 2005<br>at 12:01 A.M. standard time,<br>with no fixed date of expiration | **PREMIUM PERIOD**<br>Dec. 23, 2005 to Dec. 23, 2006<br>at 12:01 A.M. standard time |

**LOCATION OF PROPERTY INSURED**
722 Lawson Avenue, Havertown, PA 19083-4110

### *Total Premium for the Premium Period*   *(Your bill will be mailed separately)*

| | |
|---|---|
| Premium for Property Insured | $826.93 |
| **TOTAL** | **$826.93** |

The portion of the total premium shown above that is attributable to coverage for losses caused by "acts of terrorism" to which the federal Program established by the "Terrorism Risk Insurance Act of 2002" applies is $0.00.  **SEE THE ENCLOSED "POLICYHOLDER DISCLOSURE NOTICE OF TERRORISM INSURANCE COVERAGE" -- AP3337.**

*Your policy change(s) are effective as of Dec. 23, 2005*



**Allstate Indemnity Company**



# Landlords Package
# Policy Declarations

## Summary

| NAMED INSURED(S) | YOUR ALLSTATE AGENT IS: | CONTACT YOUR AGENT AT: |
|---|---|---|
| John Doherty<br>701 Penfield Avenue<br>Havertown PA 19083-4121 | McKeon Agency Inc<br>2525 Haverford Rd 1F<br>Ardmore PA 19003 | (610) 642-9919 |

| POLICY NUMBER | POLICY PERIOD | PREMIUM PERIOD |
|---|---|---|
| 9 08 878075 12/23 | Begins on Dec. 23, 2005<br>at 12:01 A.M. standard time,<br>with no fixed date of expiration | Dec. 23, 2005 to Dec. 23, 2006<br>at 12:01 A.M. standard time |

**LOCATION OF PROPERTY INSURED**
755 Lawson Avenue, Havertown, PA 19083-4109

## Total Premium for the Premium Period   *(Your bill will be mailed separately)*

| | |
|---|---|
| Premium for Property Insured | $843.82 |
| **TOTAL** | **$843.82** |

The portion of the total premium shown above that is attributable to coverage for losses caused by "acts of terrorism" to which the federal Program established by the "Terrorism Risk Insurance Act of 2002" applies is $0.00. **SEE THE ENCLOSED "POLICYHOLDER DISCLOSURE NOTICE OF TERRORISM INSURANCE COVERAGE" -- AP3337.**



**Allstate Property and Casualty Insurance Company**



### AMENDED

# Homeowners
# Policy Declarations

## Summary

| NAMED INSURED(S) | YOUR ALLSTATE AGENT IS: | CONTACT YOUR AGENT AT: |
|---|---|---|
| James Doherty<br>PO Box 12<br>Haverford PA 19041-0012 | McKeon Agency Inc<br>2525 Haverford Rd 1F<br>Ardmore PA 19003 | (610) 642-9919 |

| POLICY NUMBER | POLICY PERIOD | PREMIUM PERIOD |
|---|---|---|
| 9 08 879293 12/24 | Begins on Dec. 24, 2009<br>at 12:01 A.M. standard time,<br>with no fixed date of expiration | Dec. 24, 2009 to Dec. 24, 2010<br>at 12:01 A.M. standard time |

**LOCATION OF PROPERTY INSURED**
701 Penfield Avenue, Havertown, PA 19083-4121

## Total Premium for the Premium Period  *(Your bill will be mailed separately)*

| | |
|---|---|
| Premium for Property Insured | $1,358.54 |
| **TOTAL** | **$1,358.54** |

**Allstate Indemnity Company**



## AMENDED
# Landlords Package
# Policy Declarations

## *Summary*

| | | |
|---|---|---|
| **NAMED INSURED(S)**<br>John Doherty<br>701 Penfield Avenue<br>Havertown PA 19083-4121 | **YOUR ALLSTATE AGENT IS:**<br>McKeon Agency Inc<br>2525 Haverford Rd 1F<br>Ardmore PA 19003 | **CONTACT YOUR AGENT AT:**<br>(610) 642-9919 |
| **POLICY NUMBER**<br>9 08 879297 12/24 | **POLICY PERIOD**<br>Begins on Dec. 24, 2005<br>at 12:01 A.M. standard time,<br>with no fixed date of expiration | **PREMIUM PERIOD**<br>Dec. 24, 2005 to Dec. 24, 2006<br>at 12:01 A.M. standard time |

**LOCATION OF PROPERTY INSURED**
734 Penfield Avenue, Havertown, PA 19083-4122

## *Total Premium for the Premium Period*   *(Your bill will be mailed separately)*

| | |
|---|---|
| Premium for Property Insured | $850.76 |
| **TOTAL** | **$850.76** |

The portion of the total premium shown above that is attributable to coverage for losses caused by "acts of terrorism" to which the federal Program established by the "Terrorism Risk Insurance Act of 2002" applies is $0.00. **SEE THE ENCLOSED "POLICYHOLDER DISCLOSURE NOTICE OF TERRORISM INSURANCE COVERAGE" -- AP3337.**

*Your policy change(s) are effective as of Dec. 24, 2005*



MAR. 1, 2007 1:42PM



increase in hazard of which the mortgagee has knowledge;

d) give us the mortgagee's right of recovery against any party liable for loss; and

e) after a loss, and at our option, permit us to satisfy the mortgage requirements and receive full transfer of the mortgage.

This mortgagee interest provision shall apply to any trustee, loss payee or other secured party.

10. **Permission Granted to You**

a) The residence premises may be vacant or unoccupied for any length of time, except where a time limit is indicated in this policy for specific perils. A building structure under construction is not considered vacant or unoccupied.

b) You may make alterations, additions or repairs, and you may complete structures under construction.

11. **Our Rights to Recover Payment**
When we pay for any loss, an insured person's rights to recover from anyone else become ours up to the amount we have paid. An insured person must protect these rights and help us enforce them.

You may waive your rights to recover against another person for loss involving the property covered by this policy. This waiver must be in writing prior to the date of loss.

12. **Our Rights to Obtain Salvage**
We have the option to take all or any part of the damaged or destroyed covered property upon replacement by us or payment of the agreed or appraised value.

We will notify you of our intent to exercise this option within 30 days after we receive your signed, sworn proof of loss.

When we settle any loss caused by theft or disappearance, we have the right to obtain

all or part of any property which may be recovered. An insured person must protect this right and inform us of any property recovered. We will inform you of our intent to exercise this right within 10 days of your notice of recovery to us.

13. **Action Against Us**
No one may bring an action against us in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, under a coverage to which Section I Conditions applies, unless:

a) there has been full compliance with all policy terms; and

b) the action is commenced within one year after the inception of loss or damage.

14. **Loss to a Pair or Set**
If there is a covered loss to a pair or set, we may:

a) repair or replace any part of the pair or set to restore it to its actual cash value before the loss; or

b) pay the difference between the actual cash value of the pair or set before and after the loss.

15. **Glass Replacement**
Payment for loss to covered glass includes the cost of using safety glazing materials when required by law.

16. **No Benefit to Bailee**
This insurance will not benefit any person or organization who may be caring for or handling your property for a fee.

17. **Other Insurance**
If both this insurance and other insurance apply to a loss, we will pay the proportionate amount that this insurance bears to the total amount of all applicable insurance. However, in the event of a covered loss by theft, this insurance shall be excess over any other insurance that covers loss by theft.

18. **Property Insurance Adjustment**
When the Policy Declarations indicates that the Property Insurance Adjustment Condition

Page 20

Exhibit D

**J. SCOTT O'KEEFE, P.C.**
ATTORNEY-AT-LAW
1500 WALNUT STREET
SUITE 1100
PHILADELPHIA, PA 19102-3590

J. SCOTT O'KEEFE, ESQUIRE
JSOKEEFE@VERIZON.NET

TELEPHONE: (215) 546-7755
FACSIMILE: (215) 735-9004

January 30, 2006

Ms. Mary Lou Dougherty
Mr. James Dougherty
PO Box 797
Havertown, PA  19083

RE:   **Christine Cucurillo and John Falcone**
       **Premises:  25 W. Wilmot Avenue**
       **Havertown, PA**

Dear Ms. Dougherty and Mr. Dougherty:

Please be advised that this office has been retained to represent Ms. Christine Cucurillo and Mr. John Falcone in connection with the rental of the above captioned premises. As you are well aware by now, the house is infested with mold. This has caused severe illness in the child, as well as the lessees of the premises. A physician has examined the child and in a medical report, required that the child be removed from the premises immediately. There was a health hazard to the parents as well. You should be advised that they are having their health situations evaluated by physicians.

The premises has been inspected by a mold inspector who found the presence of a offending mold and agreed that this is the cause of any respiratory illness and other physical ailments suffered by the lessees of the premise. Furthermore, Haverford Township License and Inspection, as well as Havertown Commissioner of Codes have been out and visited this premises and have documented the conditions of the premises.

Needless to say, there will be no rent forthcoming. As you are well aware, my clients have moved out of this building.

It is my understanding that you have changed the locks on the doors. Please change all the utilities into your names from the date the locks were changed.

Page Two
January 26, 2006
RE:  Premises of
25 W. Wilmont Avenue
Havertown, PA  19083

Please also advise when my clients can obtain their belongings from the premises. I would suggest that this be done in the very near future or I would expect you would have to pay for the replacement of those belongings which are still in your premises.

Thank you for your time and expected cooperation in this matter.

Very truly yours,

J. SCOTT O'KEEFE, ESQUIRE

JSO'K/lm

Exhibit E

## HAVERFORD TOWNSHIP
DEPARTMENT OF CODE ENFORCEMENT
HOUSING CODE
INSPECTION REPORT
610-446-1000 EX:262

LOCATION _____  DATE OF INSPECTION 12-13-04

OWNER _____  PHONE# _____

BUILDING IS ___ SF DWELLING ___ MULTI FAMILY ___ 2 FAMILY DWELLING ___ STUDENT HOUSE

CONSTRUCTION TYPE ___ BRICK ___ FRAME ___ SIDING ___ OTHER

HEIGHT IN STORIES ___ CONDITION ___ GOOD ___ ACCEPTABLE

ROOF & SPOUTING ___ GOOD ___ NOT ACCEPTABLE   PORCH & STAIRS ___ GOOD ___ BAD FREE OF WEEDS & RUBBISH

YARD-DRAINAGE ___ GOOD ___ BAD   PAVING ___ GOOD

HEATING & COOKING EQUIPMENT

TYPE OF HEAT USED ___ HOT AIR ___ STEAM ___ HOT WATER ___ UNIT HEATERS ___ HEAT PUMP

TYPE FUEL USED ___ GAS ___ OIL   SERVICE CONTR.

FURNACE ___ GOOD ___ FAIR ___ UNACCEPTABLE.

FLAMMABLES REMOVED FROM FURANCE AREA ___ YES ___ NO   TYPE COOKING EQUIP ___ GAS ___ ELEC.

STOVES CONDITION ___ ACCEPTABLE ___ NEEDS CLEANING ___ UNACCEPTABLE

HALLS & EXITS ___ SPRINKLERS ___ YES ___ NO
WELL LIGHTED ___ YES ___ NO   EXIT LIGHT WORKING ___ HAND RAIL ___ YES ___ NO
FREE OF RUBBISH ___ YES ___ NO# ALARMS PER FLOOR
TWO EXITS ABOVE THE SECOND FLOOR ___ YES ___ NO   TYPE OF EXTING INSP.
SMOKE DETECTORS WORKING ___ CARPET/TILE IN GOOD CONDITION
BASEMENT ___ CELLAR ___ RUBBISH
DRY ___ WET   CLEAN ___ YES ___ NO
HUMAN OCCUPANY
WINDOWS FACING OUT
ELECTRIC OUTLETS
WALLS, CEILING & FLOORS GOOD CONDITION

| LOCATION OF UNIT | | | ELECTRIC OUTLETS | | PLUMBING FIXTURES WITHIN UNITS | | | | HEAT | | HOT & COLD WATER | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| # OF ROO | # OF PEOPL | OVER CROWDED | | | SHOWER | TUB | SINK | TOILET | HEAT | | HOT & COLD WATER | |
| | | YES | NO | YES | NO | YES | NO | | | | YES | NO | YES | NO |

REMARKS  OK To Lease  12-15-04

| | YES | NO |
|---|---|---|
| GENERAL CONDITIONS | | |
| WALLS, CEILING & FLOORS | | |
| ANY STORAGE UNDER STAIRS | | |
| WINDOWS IN GOOD CONDITION | | |
| FLAMMABLES STORED ANYWHERE | | |
| SUFFICIENT METAL GARBAGE CANS | | |
| COMPLIANT WITH ELECTRIC CODE | | |
| ROACHES, RODENT OR BUGS | | |
| ROOM AREA MEETS MINIMUM REQUIREMENTS | | |
| CLOSURE ON STORAGE ROOM DOORS | | |
| SECURITY TO ENTRANCE OF BUILDING | | |
| FIRE ESCAPE IN GOOD WORKING CONDITION | | |
| AIR CONDITIONING IN GOOD WORKING CONDITION | | |
| INDIVIDUAL THERMOSTATS | | |
| DESCRIPTION OF APARTMENT, ROOM ETC. | | |

ALL WORK MUST BE COMPLETED IN _____ DAYS.
CALL (610) 446-1000 EX: 262 FOR REINSPECTION.

RECEIVED BY: _____

INSPECTOR _____

*PERMITS MUST BE OBTAINED IN ADVANCE OF THE START OF ALL WORK.



James Moore Doherty
PO Box 797
Havertown, Pa. 19083
December 28, 2005

Exhib.+
F

John Falcone and Christine Cucurullo
25 W. Wilmot Avenue
Havertown, Pa. 19083

RE: lease agreement

Dear John and Christine:

After I notified you of Virginia Moore's passing, we discussed your lease agreement. As you know your lease with Virginia provided for a security deposit of $1,275.00 which has not been paid. You have said that you were to redecorate the bathroom instead. However, that seems not to have worked out. In addition your personal problems have led to your monthly payments of rent being delinquent. As you know the rent of $1,275.00 which due December 19th is unpaid. As you know during Ginny's illness the matter slide from her attention. In light of the procedures that must be followed following her death, I am not able to let the situation continue..

Inasmuch as your lease with Virginia has been broken, I am enclosing a new lease so that there is no confusion as to where you stand. The new lease provides for rent in the amount of $1,275.00 to be paid on the 19th of each month as the prior lease with Virginia did so there is no need to prorate the rent. However, you will need to pay the delinquent rent due as of December 19th, 2005 of $1,275.00 without further delay. The new lease provides for an initial short term of five months beginning January 19th, 2006 so that the renewal date is in late June, June 20th, 2006 to accommodate your school year for your children. Please see enclosed lease. Sign it and return it to me at the above address with the unpaid rent of $1,275.00 by January 5, 2006.

You have expressed a desire to remain in the premises; however, as you know, to do so you must pay the rent when due.

Yours

Doherty

U.S. POSTAL SERVICE   CERTIFICATE OF MAILING
MAY BE USED FOR DOMESTIC AND INTERNATIONAL MAIL, DOES NOT
PROVIDE FOR INSURANCE—POSTMASTER

Affix fee here in stamps
or meter postage and
post mark. Inquire of
Postmaster for current
fee.

Received From

One piece of ordinary mail addressed to:

PS Form 3817, Mar. 1989

Exhib.7
G 

P.O. Box 797
Havertown, Pa. 19083
February 4, 2006

Allstate Indemnity Company
Northbrook Illinois 60062

McKeon Agency Inc.
2525 Haverford Rd. 1F
Ardmore, Pa. 19003

RE: 908 97994 effective 12/24/05

Dear Insurer and Agent:

Enclosed please find copy of letter of J. Scott O'Keefe, attorney for occupants, Christine
Cucurillo and Johb Falcone, of 25 W. Wilmot Avenue, Havertown, Pa. 19083. The
premises was inspected by Haverford Township Codes prior to being leased to Christine
Cucurillo and John Falcone by Virginia Moore (see attached Inspection Report and page
one and page four of lease).

At the time the lease was executed the following were agents or insurers of the property
where the named insureds were Virginia Moore and James Doherty Trustee, (who have
been notified under separate cover).
1. agent::John P. Meehan Agency
1100 West Chester Pike
Havertown, Pa. 19083
Fax 610 853-4720
2. Insurer The Cumberland Mutual Fire Insurance Company
Ridgewood Corporate Center
410 Boot Road
Downingtown Pa. 19335
610 873-4000
3. Insurer: United States Liability Insurance – address unknown
4. Insurer- Philadelphia Contributionship Ins. Co.
210 South Fourth Street
Philadelphia, Pa. 19106
(The following are possibly policy numbers for coverage for Virginia Moore and James
Doherty Trustee: 3104890 HOO54688 078041)

Christine Cucurillo and John Falcone were notified that they had breached their lease
with Virginia Moore (see attached letter of December 28th, 2005). Rent for the period
following November 19, 2005 was unpaid.

Sincerely, yours,

James and John Doherty
By James Doherty

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*
For delivery information visit our website at www.usps.com®

| | |
|---|---|
| Postage | $0.63 |
| Certified Fee | $2.40 |
| Return Receipt Fee (Endorsement Required) | $1.85 |
| Restricted Delivery Fee (Endorsement Required) | $0.00 |
| Total Postage & Fees | $ 4.88 |

02/04/2006

**Sent To**
McKeon Agency Inc.
2525 Haverford Road 1F
7003 1010 0003 3455 9663
Ardmore, PA 19003

---

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*
For delivery information visit our website at www.usps.com®

NORTHBROOK IL 60062

| | |
|---|---|
| Postage | $0.63 |
| Certified Fee | $2.40 |
| Return Receipt Fee (Endorsement Required) | $1.85 |
| Restricted Delivery Fee (Endorsement Required) | $0.00 |
| Total Postage & Fees | $ 4.88 |

02/04/2006

Allstate Indemnity Company
7005 1160 0005 0828 5390
Northbrook, IL 60062

---

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*
For delivery information visit our website at www.usps.com®

PHILADELPHIA PA 19106

| | |
|---|---|
| Postage | $0.63 |
| Certified Fee | $2.40 |
| Return Receipt Fee (Endorsement Required) | $1.85 |
| Restricted Delivery Fee (Endorsement Required) | $0.00 |
| Total Postage & Fees | $ 4.88 |

02/04/2006

---

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*
For delivery information visit our website at www.usps.com®

CHARLESTOWN PA 19335

| | |
|---|---|
| Postage | $0.63 |
| Certified Fee | $2.40 |
| Return Receipt Fee (Endorsement Required) | $1.85 |
| Restricted Delivery Fee (Endorsement Required) | $0.00 |
| Total Postage & Fees | $ 4.88 |

02/04/2006

The Cumberland Mutual Fire Insurance Co
Ridgwood Corporate Center

---

**SENDER:**
- Complete items 1 and/or 2 for additional services.
- Complete items 3, 4a, and 4b.
- Print your name and address on the reverse of this form so that we can return this card to you.
- Attach this form to the front of the mailpiece, or on the back if space does not permit.
- Write "Return Receipt Requested" on the mailpiece below the article number.
- The Return Receipt will show to whom the article was delivered and the date delivered.

I also wish to receive the following services (for an extra fee):
1. ☐ Addressee's Address
2. ☐ Restricted Delivery
Consult postmaster for fee.

3. Article Addressed to:
John P. Meehan Agency Inc.
1100 West Chester Pike
7003 1010 0003 3455 9670
Havertown, Pa. 19083

4a. Article Number  7003 1010 0003 3455 9670

4b. Service Type
☐ Registered ☐ Certified
☐ Express Mail ☐ Insured
☑ Return Receipt for Merchandise ☐ COD

7. Date of Delivery

5. Received By: (Print Name)

8. Addressee's Address (Only if requested and fee is paid)

6. Signature (Addressee or Agent)

Domestic Return Receipt

---

**SENDER: COMPLETE THIS SECTION**
- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:
Allstate Indemnity Company
7005 1160 0005 0828 5390
Northbrook, IL 60062

**COMPLETE THIS SECTION ON DELIVERY**
A. Signature
X _____ DOANE, AGT FOR ALLSTATE INS. CO
☐ Agent
☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery
FEB 17 9 2006

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Certified Mail ☐ Express Mail
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? (Extra Fee) ☐ Yes

2. Article Number
(Transfer from service label)
7005 1160 0005 0828 5390

PS Form 3811, February 2004    Domestic Return Receipt

---

HAVERTOWN PO
HAVERTOWN, Pennsylvania
190839998
4165410282-0097
02/04/2006    (800)275-8777    12:54:56 PM

| Product Description | Sales Receipt Qty | Unit Price | Final Price |
|---|---|---|---|
| DOWNINGTOWN PA 19335 | | | $0.63 |
| First-Class | | | |
| 1.70 oz. | | | |
| Return Rcpt (Green Card) | | | $1.95 |
| Certified | | | $2.40 |
| Label #: | | | |
| 70031010000334559694 | | | |
| Issue PVI: | | | $4.88 |
| NORTHBROOK IL 60062 | | | $0.63 |
| First-Class | | | |
| 1.70 oz. | | | |
| Return Rcpt (Green Card) | | | $1.85 |
| Certified | | | $2.40 |
| Label #: | | | |
| 70051160000508285390 | | | |
| Issue PVI: | | | $4.88 |
| HAVERTOWN PA 19083 | | | $0.63 |
| First-Class | | | |
| 1.70 oz. | | | |
| Return Rcpt (Green Card) | | | $1.85 |
| Certified | | | $2.40 |
| Label #: | | | |
| 70031010000334559670 | | | |
| Issue PVI: | | | $4.88 |
| PHILADELPHIA PA 19106 | | | $0.63 |
| First-Class | | | |
| 1.70 oz. | | | |
| Return Rcpt (Green Card) | | | $1.85 |
| Certified | | | $2.40 |
| Label #: | | | |
| 70031010000334559687 | | | |
| Issue PVI: | | | $4.88 |
| ARDMORE PA 19003 | | | $0.63 |
| First-Class | | | |
| 1.70 oz. | | | |
| Return Rcpt (Green Card) | | | $1.85 |
| Certified | | | $2.40 |
| Label #: | | | |
| 70031010000334559663 | | | |
| Issue PVI: | | | $4.88 |

| | |
|---|---|
| | $24.40 |
| | $24.40 |

XXXXXXXXXXX9516
004042
253
02870618

...s and postage. –
services only.
business.
opy